(Decided 16th March, 1887.)

---

DUDLEY AND CARPENTER, JOHN T. MITCHELL AND COMPANY, and BARBOUR AND HAMILTON *vs.* HURST, MILLER & Co., HURST, PURNELL & Co., and J. K. ROBERTS, Attorney.

*Mortgagor and Mortgagee—Fixtures—Constructive annexation—Injunction—Irreparable injury—Evidence—Acts and declarations of a Grantor made Subsequent to his Deed.*

A mortgage of a farm, " together with the buildings and improvements thereupon, and the rights, roadways, waters, privileges, appurtenances and advantages thereto belonging or in anywise appertaining," is broad enough to cover everything that the law would, as between mortgagor and mortgagee, determine to be a fixture.

Dudley and Carpenter, *et al. vs.* Hurst, Miller & Co., *et al.*

Machinery used in the canning business, parts of which are attached to the soil, and other parts are necessary to the use of the parts so attached, is a fixture, and as between the mortgagor and mortgagee of the land upon which it is erected, will pass to the latter.

Where in the case of machinery, the principal part becomes a fixture by actual annexation to the soil, such part of it as may not be so physically annexed, but which if removed would leave the principal thing unfit for use, and would not of itself and standing alone be well adapted for general use elsewhere, is considered constructively annexed.

The owner of a farm having thereon a large canning establishment in full operation, with a large growing crop of corn to be canned, is entitled to an injunction to prevent an attempted sale and removal of the canning machinery.

An injury may be said to be irreparable when it cannot be measured by any known pecuniary standard. ·

The acts and declarations of a grantor subsequent to the deed cannot be received to invalidate his own deed.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and IRVING, J.

*C. C. Magruder,* and *Frank H. Stockett,* for the appellants.

*William Stanley,* and *Joseph K. Roberts,* for the appellees.

STONE, J., delivered the opinion of the Court.

Thomas Clagett, of Weston, was the owner in fee of a large tract of land lying in Prince George's County, Maryland, containing about six hundred acres. Upon this

farm he resided and had established a canning factory for
the purpose of canning fruits, vegetables and corn, princi-
pally the latter. In July, 1883, he mortgaged this farm
to Wm. B. Bowie. This mortgage is not in the record,
but we have been furnished with a certified copy taken by
the proper officers from the records of Prince George's
County.

This mortgage after describing and granting the land,
in the usual form, goes on to say:

" Together with the buildings and improvements there-
upon, and the rights, roads, ways, waters, privileges, ap-
purtenances and advantages thereto belonging, or in any
wise appertaining."

This farm was sold under the mortgage and purchased
by the complainants in April, 1885. They took possession
of the farm and rented it for the residue of the year 1885,
and their tenants continued the canning business.

In March, 1885, the mortgagor Clagett executed a chat-
tel mortgage of the machinery in the canning factory to
the respondents, and in September, 1885, the respondents
were about to sell the machinery under the power of sale
contained in their mortgage, when the complainants ob-
tained a preliminary injunction against such sale, upon
the ground that the machinery in the canning factory
were fixtures, and passed to them under their mortgage
of July, 1883.

A good deal of testimony was then taken, and upon the
final hearing the Court below dissolved the injunction, and
dismissed the bill, and the complainants appealed to this
Court.

It will be seen from this brief statement of the case,
that the important question in the case is, whether the
machinery in the canning factory passed to the complain-
ants under the mortgage of July, 1883, or in other words,
whether such machinery as between the *mortgagor and
mortgagee,* were or were not fixtures.

Dudley and Carpenter, *et al. vs.* Hurst, Miller & Co., *et al.*

The learned Judge who tried the case below, did not decide that question, but dismissed the bill upon the ground that complainants had an adequate remedy at law, even if this machinery did belong to them.

But if the machinery had really become, by annexation, actual or constructive, a part of the freehold, we entertain no doubt of the power of a Court of equity to restrain and prevent its attempted severance.   But if the machinery still retained its distinctive character as a personal chattel, it did not in fact belong to the complainants, but to the respondents, and then the complainants had no right to ask the interposition of a Court of equity in their behalf, and the bill must be dismissed.   The character of the machinery is then the only question of importance in the case.

A learned author of a work on Fixtures (*Ewell*) says, there is perhaps no other legal term which has been used in so many differing and often contradictory significations as the term "fixtures."   The term fixture is generally used in reference to some originally personal chattel, which has been actually or constructively affixed either to the soil itself, or some structure legally a part of such soil.

The tests by which a fixture is determined are generally these :

1st.  Annexation to the realty either actual or constructive.

2nd.  Adaptation to the use of that part of the realty with which it is connected.

3rdly.  The intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article annexed, the situation of the party making the annexation, the mode of annexation, and the purpose for which it was annexed.   *Ewell on Fixtures ; Tyler on Fixtures ; Jones on Mortgages.*

Dudley and Carpenter, *et al. vs.* Hurst, Miller & Co., *et al.*

Of these tests the most important is the question of intention. This is clearly shown by the fact that the law is very different between landlord and tenant and mortgagor and mortgagee, or what is the same, vendor and vendee. Many things being held as fixtures between vendor and vendee, which do not lose their character of personal chattels when the question is between landlord and tenant. This case is to be governed by the law as it exists between mortgagor and mortgagee, or vendor and vendee, and not as it is between landlord and tenant.

We have quoted a portion of the mortgage under which the appellants claim, not for the purpose of showing that the machinery in question was *specifically* included in its terms, but for the purpose of showing that nothing that was actually or constructively affixed to the freehold, was *excepted* from its operation. The mortgage is broad enough, it will be seen to cover every thing that the law would, as between mortgagor and mortgagee, determine to be a fixture, and the question is resolved into whether this machinery is a "fixture."

The business of canning is a comparatively new one, and the owner of this farm, Mr. Clagett, having commenced this business in 1882 as an experiment, and being satisfied with the results, determined to make it his *permanent business.* The main part of the machinery consisted of a boiler, which was placed upon a brick foundation in a boiler house built for that purpose. This building is attached to the main building both with mortices and spikes. In order to remove the boiler, which weighs about ten thousand pounds, it would be necessary to pull down the whole boiler house including the sills. There is connected with the boilers by steam pipes a steam pump fixed on a hard wood foundation, strengthened by heavy timbers driven into the ground, and the foundation is spiked to these timbers. Running from the boiler is a large steam pipe which is carried into the main build-

ing, and made fast to the ceiling above; from this pipe there are several pipes which pass down the side of the house to the ground, and two feet below the floor. This piping connects with the kettles, scalder, &c., and furnish the steam for them. The kettles rest upon hard wood foundations two feet under the floor; these are in the canning house proper, as distinguished from the boiler house. There are gasoline pots which are upon a stand with a brick and sheet iron foundation under them, and are connected with a gasoline tank about thirty feet from the main building, which tank is in a house built for that purpose.

To remove the boiler and steam pump it would, as we have said, been necessary to tear down the boiler house; and to remove the process kettles it would be necessary to tear up the whole floor of the process room, which is the main portion of the building. The removal would destroy the piping which was cut to fit the house; even the kettles and tubs could not be removed through the doors, as they were put in before the building was completed. The building was constructed for canning purposes only, and when so constructed, and the machinery placed in it, the business was intended to be permanent. The farm itself furnished the main portion of the corn, fruits and vegetables canned.

That the machinery above described, and which constituted the motive power of the factory, is a fixture, and *as between mortgagor and mortgagee* passed to the latter, we think well settled. Chancellor JOHNSON, who seems to have favored the relaxation of the ancient rule, as far as practicable, in *McKim vs. Mason*, 3 *Md. Ch. Dec.*, 186, decided that the motive power of a cotton mill, consisting of boiler, engine, &c., passed to the mortgagee, even when they were placed upon the land *after* the mortgage was executed. In support of his position, the Chancellor cites the cases of *Winslow vs. Merchants Ins. Co.*, 4 *Metcalf*,

306; 3 *Mason,* 459; 6 *Greenleaf,* 154; 2 *Watts & Sarg.,* 116.

In *Kirwan vs. Latour,* 1 *Harr. & J.,* 289, the matter in controversy was a distillery, and CHASE, C. J., said:

"The case of vendor and vendee is different from that of landlord and tenant. In the latter case the law allows the tenant to remove many things which may be considered as fixed. This is for the benefit of trade; and where a tenant puts up any thing for the purpose of carrying on his trade, he may remove it. The pumps, cisterns, iron grating, and door, distillery, and house mills passed by this deed, but not the joists, vats, buckets, pickets and faucets which are not fixed to the freehold."

Many other cases might be cited from other States shewing that machinery located as that we have described, passes to the mortgagee, but it is hardly necessary to cite them.

But it seems to be intimated in *Kirwan vs. Latour,* above cited, that although what was *actually fastened* to the soil passed by the deed, such parts of the distillery as were not so fixed did not so pass. This case was decided in 1802. But since the decision of that case the doctrine of *constructive* annexation has been much discussed. From the general current of decisions, the following principle seems clearly deducible.

That where in the case of machinery the *principal part* becomes a fixture by actual annexation to the soil, such part of it as may be not so physically annexed, but which if removed would leave the principal thing unfit for use, and would not of itself and standing alone be well adapted for general use elsewhere, is considered *constructively* annexed.

Thus the key of a lock, the sail of a wind-mill, the leather belting of a saw-mill, although actually severed from the principal thing, and stored elsewhere, pass by constructive annexation. They must be such as go to .

complete the machinery, which is affixed to the land, and which, if removed, would leave the principal thing incomplete and unfit for use. *Beardsley vs. Ontario Bank,* 31 *Barb.,* 619, *decided in* 1859 ; *Burnside vs. Twitchell,* 43 *N. H.,* 390, *decided in* 1861.

In this case there are some articles not *actually annexed* to the soil, such as crates, capping machines and work tables, but are essentially necessary to the working of the principal machinery, and pass by constructive annexation. The main machinery would not be in working condition without them, and they are not adapted for general purposes.

We are therefore of opinion that the whole machinery of the canning factory passed under the mortgage to Bowie, and consequently to his vendees under the mortgage sale.

The remaining question in the case is one of jurisdiction, the learned Judge below having dismissed the bill upon the ground that it did not disclose a case for the interposition of a Court of equity. In this we think he was in error.

Here was a large canning factory in full operation during the canning season, and with a large growing crop of corn to be canned. The season for canning is a short one, and requires many employees in the process, as well as in caring for and gathering the crops to be canned where they are raised upon the farm. To sell and remove the whole machinery in the midst of the short canning season would certainly involve the destruction of the property in the character in which it was then, and had been for some years held and enjoyed. The canning house would have been rendered useless, and the growing crop of corn comparatively worthless, the employees' discharge rendered necessary, and the ruin of the tenants carrying on the factory probable.

One of the grounds laid down by this Court for the interposition of a Court of equity in *Gilbert vs. Arnold,* 30

*Md.*, 29, is where "the trespass goes to the destruction of the property *in the character in which* it has been held and enjoyed." That the facts stated and the relief asked in the bill, fully come up to the standard of the destruction of the property in the character in which it had been held and enjoyed, we think there can be no doubt. In *Shipley vs. Ritter*, 7 *Md.*, 408, this Court decided that a Court of equity would step in and prevent the destruction of fruit or ornamental trees, upon the ground that destruction presented a case of irremediable mischief going to the *destruction of the estate in the character in which it had been enjoyed.*

"If," says Judge STORY, "the trespass be fugitive, and temporary and adequate compensation can be obtained at law, there is no ground to justify the interposition of a Court of equity. But if the acts done or *threatened to be done* to the property would be ruinous or irreparable, or would impair the just enjoyment of the property in future, if indeed the Courts of equity did not interfere in cases of this sort, there would be great failure of justice in the country."

In *Scully vs. Rose*, 61 *Md.*, 408, this Court granted an injunction to prevent digging ore from an ore bank upon the ground that it was a *permanent injury* to the property.

But there is indeed another aspect in which it may be viewed. Irreparable injury is one well known ground for an injunction. An injury may be said to be irreparable when it cannot be measured by any known pecuniary standard. By what standard could a jury assess and determine the damage done to the true owner of the factory by the breaking up of his business at that critical period? Before he could be *compensated*, an estimate would have to be made of his outlay, the contracts upon which he was liable, and his prospective profits or losses. How much of this could legally be gone into in an action of replevin

or trespass, it is unnecesary to determine. It is enough to say that, under the circumstances of this case we see no *adequate* remedy at law.

It is not necessary to refer to the exceptions to the evidence, further than to say, that the acts and declarations of a grantor *subsequent to the deed,* cannot be heard to invalidate his own deed.

The decree will be reversed, and the case remanded, that the injunction may be made perpetual.

As to Joseph K. Roberts, one of the respondents, the bill will be dismissed, as he appears only to have been acting as an attorney of respondents in conducting the sale.

> *Decree reversed, and*
> *case remanded.*

(Decided 16th March, 1887.)