# HARRY ABRAMSON *v.* WALTER W. PENN.
## [No. 41, October Term, 1928.]

*Decided December 7th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles W. Heuisler* and *J. Stanislaus Cook,* with whom were *Heuisler, Cook & Cook* on the brief, for the appellant.

*Edwin T. Dickerson* and *Lindsay C. Spencer,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On or about November 24th, 1926, Walter W. Penn, trading as W. W. Penn & Co., entered into a conditional contract of sale with the Redwood Garage, Inc., under which it furnished and installed, in a garage building on lot No. 619 Redwood Street in Baltimore City, ten Glow gas steam radiators for $1,150, of which $200 was paid in cash. The garage property at that time was owned by the Redwood Garage, Inc., which on November 1st, 1927, sold it to Harry Abramson. The Redwood Garage, Inc., after paying $350 in addition to the initial cash payment on account of the purchase price of the radiators, defaulted on its contract, and the appellee in this case, after the property had been conveyed to Abramson, asserted title to the radiators, and threatened to enforce his claim by an action of replevin. Abramson thereupon filed a bill of complaint in Circuit Court No. 2 of Baltimore City against the appellee, in which he prayed that he be enjoined (1) from removing "said heating plant" from the property, and (2) from instituting or prosecuting any action at law which might result in its removal therefrom. On that bill a "show cause" order was passed, but before the case was heard appellee caused a writ of replevin to issue for the seizure of the radiators, but prosecution of that proceeding was restrained pending this litigation. The defendant then answered, testimony was taken, the case heard, and at the con-

clusion of the hearing the court dissolved the injunction and dismissed the bill. From that decree Abramson appealed.

In addition to what has been stated, it may be inferred from the pleadings, admissions, and evidence in the case, that the radiators weigh about six hundred pounds each, and rest upon brackets which are screwed to the wall of the building; they are all connected with a single gas supply pipe, but aside from that appear to be independent units, as the water for the generation of steam is supplied separately to each radiator through a filling cap on the side. The whole system, pipes, brackets, and radiators, was installed by the appellee, and may be removed without any material damage to the property. It was also admitted that the conditional sales "agreement provided that the title to said radiators should remain in the defendant until the whole of said purchase price should be paid; * * * that in the event of default by said Redwood Garage in the payment of the balance of said purchase price, the defendant should have the right to repossess said radiators; * * * that said conditional contract of sale was duly recorded by the defendant on December 22nd, 1926; * * * that the plaintiff at the time it purchased said property had not actual knowledge of said conditional contract of sale and was neither aware of the existence of said contract of sale nor the fact that it had been recorded." The record in this case is meagre and fails to disclose the precise terms of the conditional sales contract, the use to which the garage property was adapted, whether there was any method of heating it except by the radiators, or whether they were essential to the ordinary and convenient use of the property, but taking the case as we find it, the appeal does submit these questions:

(1) Does a conditional sales contract duly recorded under Code, art. 21, sec. 55, afford to the purchaser of real property constructive notice that the title to articles described in such sales contract, which at the time it was made were chattels, but which at the time said real estate was purchased were so incorporated therewith as to become an integral part thereof, is reserved to the conditional vendor (a) when the character of the chattels is such that the conditional vendor

must have known that they would in ordinary course be so used and converted, (b) where they were not of that character?

(2) Were the radiators involved in this proceeding, in fact, at the time appellant took title to the property in which they were located, so annexed to the realty as to become a permanent and integral part thereof?

(3) If the purchaser of the realty at the time of his purchase had constructive notice of the conditional sales agreement, will he be permitted to assert title to the chattels against the conditional sales vendor whether the chattels were at that time integrated with the real estate or whether they were not?

The proposition first stated is novel in this court, and while the question has not infrequently arisen in other jurisdictions, the decisions in respect to it are too conflicting to establish any rule which can be said to be generally accepted. Many courts of high standing have taken the view that the recordation of a chattel mortgage or a conditional sales contract, under a statute making such recordation constructive notice to third persons, is sufficient to charge a *bona fide* purchaser for value of real estate to which chattels are annexed with notice of any lien or title reserved in such mortgage or conditional sales contract to or against such chattels. *Sword v. Low*, 122 Ill. 487; *Eaves v. Estes*, 10 Kan. 314; *Keeler v. Keeler*, 31 N. J. Eq. 181; *Ford v. Cobb*, 20 N. Y. 344; *Kribbs v. Alford*, 120 N. Y. 519; *Monarch Laundry v. Westbrook*, 109 Va. 382. Other courts have taken the opposite view, *Elliott v. Hudson* 18 Cal. App. 642; *Tibbetts v. Horne*, 65 N. H. 242; *Brennan v. Whitaker*, 15 Ohio St. 446; *Phillips v. Newsome* (Tex. Civ. App.) 179 S. W. 1123. But such cases as *Sword v. Low, supra, Eaves v. Estes, supra, Ford v. Cobb, supra,* limit the application of the rule that recordation of the chattel mortgage or conditional sales contract is constructive notice to a purchaser or subsequent mortgagee of realty, to which the chattels described in the chattel mortgage or sales contract are annexed, to cases where the chattels are of such a character that they may be removed without

damage to the freehold, and where their essential utility does not require that they should be so annexed to the freehold as to become a part thereof. So that they are consistent with the theory that where the nature of the chattels is such that if used for the purpose for which they were made they would naturally and necessarily be annexed to and become a part of some freehold, such recordation would not be constructive notice to the purchaser of such real estate. That limitation is very precisely illustrated by the case of *Keeler v. Keeler, supra,* where a chattel mortgage duly recorded was held to afford constructive notice to a subsequent mortgagee of the mortgagee's lien against such chattels, as spinning frames, etc., but no notice at all to such mortgagee of a lien reserved against a steam boiler which had been so annexed to the realty as to become incorporated therewith. The weakness of that position seems to be that it rests upon no surer foundation than casual and subjective opinion as to the character of a given article, and affords little security either to the vendor of the chattel or the purchaser of the realty, nor has it any logical basis in reason or technical law. On the other hand *Elliott v. Hudson, supra, Tibbetts v. Horne, supra, Brennan v. Whitaker, supra, Phillips v. Newsome, supra,* take the position that if the chattel has, with the knowledge of the vendor, been sold to be annexed to real estate and has been so annexed, that the purchaser of such real estate is not affected by the recordation of a chattel mortgage or conditional sales contract reserving to the conditional vendor or the mortgagee of the chattel, any title or lien to or against it, on the ground that if in fact the property has become a part of the freehold, it has ceased to be a chattel, and that the record of the chattel mortgage or conditional sales agreement ceased to afford constructive notice of the creation of the lien or the reservation of title at the time when the article ceased to be a chattel and became real property. And that seems to us the sounder conclusion, and one more consistent with the legislative policy of this state.

The statute under which such conditional contracts of sale may be recorded is in these words:

"Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed, and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third persons without notice until such note, sale or contract be in writing, signed by the vendee, and be recorded in the clerk's office of Baltimore City, or the counties, as the case may be, where bills of sale are now recorded; and such recording shall be sufficient to give actual or constructive notice to third persons when a memorandum of the paper writing, setting forth the date thereof, the amount due thereon, when and how payable and a brief description of the goods and chattels therein mentioned shall have been recorded, but it shall not be necessary that said paper writing be acknowledged or an affidavit made to the consideration therein expressed as in the case of bills of sale." (Code, art. 21, sec. 55.)

It will be observed that, not only does it omit such safeguards as are thrown about the execution and recordation of deeds and mortgages of real estate, and chattel mortgages and bills of sale, such as acknowledgment and in the case of mortgages an affidavit to the consideration, and filing the paper for record within a limited time, but it is not certain that it even requires that the written instrument containing the sale or contract itself must be filed, because, although it states in one place that the "note, sale or contract" itself must "be in writing * * * and be recorded," it later says that such recording shall be sufficient if a "memorandum of the paper writing," setting out the amount due, when and how payable, and a "brief description of the goods and chattels," be filed.

When the provisions of this statute are compared with the elaborate and careful provision made for the protection of titles to real estate, preserving the rights and equities of mortgagors, mortgagees, and third persons whose rights may be affected by recorded mortgages or liens on real property, it seems absurd to suppose that the legislature intended to strike

down and nullify that elaborate machinery, and to reverse the policy indicated by its creation, with no more evidence of such an intention than is afforded by this statute.

A more reasonable construction of it is that when it says that such "recording shall be sufficient to give actual or constructive notice to third persons," it means that it shall be sufficient to give such notice so long as the goods or chattels described in the memorandum remain chattels, but that it does not mean that it shall be sufficient to give such notice where they have with the consent or assent of the conditional sales vendor become integrated with real property.

The obvious purpose of the statute was to protect the interests of vendors under conditional sales contracts, but not to permit them to entrap or defraud innocent purchasers of real property by inducing the illusory impression that goods and chattels integrated with the real estate and apparently a part thereof are real property, when in fact they are not. And where the conditional sales vendor participates in, or consents to, such integration, he should not thereafter, as against an innocent purchaser of the realty, be heard to say that the goods and chattels are not what they appear to be.

While the authorities on that question are conflicting, that construction is not only consistent with the legislative policy of this state, but is supported by what appears to us to be the best reasoned opinion elsewhere.

Ewell in his work on Fixtures (1903) page 319, after examining a great number of authorities on the question, says: "the sounder rule and one more in accordance with the policy of the recording laws of this country, is to require actual severance or notice of a binding agreement to sever in order to deprive the purchaser or a creditor levying upon the land and fixtures of the right to the fixtures or appurtenances to the freehold. And according to the better opinion, the record or filing of a chattel mortgage being constructive notice only of an incumbrance upon goods and chattels is not sufficient to deprive such purchase or mortgage of the real estate of its bona fide character. And a mortgage of realty and fixtures appurtenant thereto, if duly recorded as a

mortgage of realty need not be recorded also as a chattel mortgage in order to protect such fixtures from the execution creditors of the mortgagor, even though such fixtures are only constructively annexed to the realty."

To the same effect is a statement in *Elliott v. Hudson*, 18 Cal. App. 647, where it is said: "We think that the purchaser of a town lot on which, at the time, there is a building containing a planing mill plant in operation, with its machinery, engines and boilers and other equipment permanently attached to the land, would have the right to assume that he was purchasing real property regardless of the fact that this equipment was necessarily personal property before it was attached to and became part of the land. The question here must be solved in the light of the facts. Had respondent searched the records of deeds, as was his duty, he would have found, what is conceded, that title to the lot was in the corporation, and nothing more. As he was purchasing from the corporation, had he searched the records of chattel mortgages for the name of the corporation as mortgagor, he would not have discovered the mortgage, for it was not made by the corporation. The statute, as we have seen, requires mortgages of personal property to be separately recorded and in a different book from the record of deeds. The record is constructive notice of transactions authorized to be made matter of record therein but no further."

To the same effect are *Tibbetts v. Horne, supra, Brennan v. Whitaker, supra, Phillips v. Newsome, supra,* and other cases collected in a note to 13 *A. L. R.* 485. In the case last cited it is said: "In this state, as in other jurisdictions, the policy of our law is that the title to real estate shall appear upon the records designated for that purpose, so that all may know in whom the legal title is vested, and appellee, having purchased in good faith and without actual notice of the trading company's mortgage or claim, was not bound to search the chattel mortgage records. He, therefore, took the engine in controversy free from the claim now asserted against him."

194

In our opinion therefore the recordation of a conditional sales agreement, reserving title to the vendor in goods and chattels which have become incorporated with real property, is not constructive notice to a *bona fide* purchaser of such property who purchased after the annexation, where the vendor knew, or was in reason bound to anticipate, that such annexation would take place. That it would afford such notice where the nature of the goods and chattels was such that the vendor was not reasonably bound to anticipate that they would be so annexed, and where he did not consent to such annexation, seems also clear, for in such a case the goods and chattels would not have become "fixtures" at common law, but would still remain personalty, and such a case constitutes no exception to the rule stated.

For instance, if one sold a number of domestic sewing machines under a conditional sales contract, the vendee could not, by permanently annexing them to a freehold without the vendor's assent, change their essential character as personal property, and one buying the realty to which they were annexed would be bound to take notice of that fact. But on the other hand, if one sold a steam heating system which, if used at all, must necessarily be permanently annexed to and incorporated with some freehold, he would be bound to know that when so incorporated it would lose its character as personalty and became real estate, and that the purchaser of such real estate would not be charged with notice of any lien or claim not recorded among the land and mortgage records.

Which brings us to the second question, as to whether in fact the radiators involved in this proceeding were so annexed to and incorporated with the realty as to become integrated therewith. Unless it is to be presumed from the very nature of the property, that the radiators when installed necessarily became so annexed to the realty as to be integrated therewith, it is impossible to reach that conclusion from anything contained in the record. For the uncontradicted evidence is to the effect that both the radiators and the pipes can be readily and quickly removed without any damage to the property, that each radiator in itself constitutes an inde-

pendent heating unit, and that they have no connection with each other except that gas is supplied to all of them by the same supply pipe. Such evidence is wholly inconsistent with the theory that the radiators are a part of the freehold, unless that inference is to be drawn from the fact that they were placed in the building for the purpose of heating it. The radiators were, so far as the record shows, ten separate heating appliances, having no more connection with the freehold than an ordinary gas heater, portable kitchen range, or heating stove, which are, certainly by the weight of authority, held not to be fixtures. *Ewell on Fixtures,* page 300. Such cases as *Keeler v. Keeler,* 31 N. J. Eq. 181, are not in point, for, while the pipes to which the court referred in that case were readily removable without damage to the freehold, they constituted a necessary part of a heating plant which itself was a part of the freehold, but more in point is the case of *Railway Sav. Inst. v. Irving Baptist Church,* 36 N. J. Eq. 61; *National Bank v. North,* 160 Pa. St. 303; *Mott Iron Works v. Middle States Co.,* 17 App. D. C. 584.

Inasmuch as the chattels retained their character as personal property, and since it was admitted that they were described in the conditional sales contract under which the appellee retained title to them and that such contract was duly recorded, such recordation was sufficient to charge appellant with notice of the fact that the vendor retained title to them. *Finance & Guaranty Co. v. The Defiance Motor Truck Company,* 145 Md. 94, 100. And since the right of parties to that contract to agree that the radiators should retain their character as personal property and could be retaken by the vendor in the event of a default under the agreement may not be questioned (*Western Md. Dairy Co. v. Wrecking Co.,* 146 Md. 322), it follows that the appellant was not entitled to the relief sought in this case, and that his bill of complaint was properly dismissed. The decree appealed from will therefore be affirmed.

*Decree affirmed, with costs.*