# BANKERS' & MERCHANTS' CREDIT COMPANY *v.* HARLEM PARK BUILDING & LOAN ASSOCIATION.

[No. 65, October Term, 1930.]

*Decided January 15th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Theodore C. Waters,* with whom were *Mullikin, Stockbridge & Waters* on the brief, for the appellant.

*Herbert L. Grymes,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

Nannie C. Payne and Raymond S. Payne, owners of the property known as 2611 N. Calvert Street, in the City of Baltimore, on the 11th day of August, 1928, executed unto the appellee, the Harlem Park Building & Loan Association, a mortgage thereon, to secure a loan of $3,510. Thereafter, on the 30th day of July 1929, Payne and wife entered into a contract with Vaile & Young, contractors, for the erection of a metal garage sixteen by eighteen feet upon the rear premises of the mortgaged property. By the contract so made, Vaile & Young were not only to furnish the necessary equipment and material, but were also to do the work in the construction of the garage. The contract price for its erection was $607.50, payable in forty-eight equal monthly installments of $12.66, for which a note was given; and, in accordance with the terms of the agreement, a mortgage was executed by Payne and wife to Vaile & Young upon the Calvert Street property, to secure the payment of the note. It was agreed by the parties thereto "that the title to the building * * * no matter whether or by what manner or degree it may be attached to the realty shall not pass to us (Payne and wife) until the aforesaid mortgage has been released." Upon the completion of the building, on the 17th day of September, 1929, Vaile & Young indorsed unto the appellant, the Bankers' & Merchants' Credit Company, the note taken from Payne and wife, and assigned to it the contract. On January 3rd, 1930, the following paper, purporting to be a memorandum of the contract, was filed for record in the office of the clerk of the Superior Court of Baltimore City, under the law authorizing the recordation of conditional sales contracts:

"Raymond S. and Nannie Payne Agreement with Vaile & Young, Vendee, unless otherwise designated, Raymond S. and Nannie Payne, Vendor, unless otherwise designated, Vaile & Young.

"Date of Filing, January 3rd, 1930.

"Property: 1 set pair main entrance doors (folding), 1 service door, 1 wire glass window, etc.

"Date of Execution, July 30th, 1929.

"Witness.

"Amount — $607.50. When and How Payable, $12.66 a month.

"Assigned, Bankers & Merchants Credit Company, July 30th, 1929."

In addition thereto, the mortgage from Payne and wife to Vaile & Young was assigned to the appellant.

Default having been made in complying with the terms and provisions of the mortgage, executed by Payne and wife to the appellee, a decree was obtained on the 27th day of November, 1929, for the sale of the property.

Thereafter, upon a petition filed by the appellant, the court, on January 25th, 1930, by consent of parties, passed an order authorizing and directing the trustees named in the decree to sell the property therein mentioned, free of any lien upon the garage which the Bankers' & Merchants' Credit Company might hold by reason of said contract, and that such lien be transferred to the proceeds of sale of the premises named in the decree; the determination of the validity and priority of said lien and the amount thereof to await the further order of the court.

The property was sold under the decree, and was purchased by the appellee, at an amount less than that owing to it upon the mortgage. An audit was made distributing the proceeds of sale and, the claim of the appellant not being allowed therein, it excepted to the ratification of the audit. After a hearing thereon, the court overruled its exceptions and ratified the audit. It is from that order that the appeal to this court was taken.

The question submitted to the chancellor for his decision was: whether the alleged lien of the appellant, the holder by assignment of the contract for the erection of the garage (a memorandum of which was recorded January 3rd, 1930, under the provisions of article 21, section 55, of the Code) was a lien superior to the lien of the mortgage executed by Payne and wife to the appellee, and recorded August 14th, 1928.

The statute above mentioned provides: "Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed, and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third persons without notice until such note, sale or contract be in writing, signed by the vendee, and be recorded in the Clerk's Office of Baltimore City, or the Counties, as the case may be, where bills of sale are now recorded."

It will be observed that this statute deals only with sales of goods and chattels. It therefore becomes necessary, in the decision of the question before us, to determine whether the garage, when erected, was a chattel, or whether it was so incorporated with the realty as to become a part of the freehold, and not a chattel.

The garage was built in the rear of the mortgaged premises on Calvert street and covered the greater part of the yard, which before its erection was a grass plot, to some extent adorned with shrubbery.

From the evidence it is rather difficult to describe with accuracy the exact construction of the garage, but, as we gather from the evidence, the building was supported by six steel columns, one at each of the corners and one between the corners on each of the two sides. These columns were sunk into concrete piers to the depth of fourteen inches, and the piers were set in the ground to the depth of three feet. The side and rear walls sank into the concrete base a depth of several inches. In addition thereto, there was what was spoken of as an angle iron one and one-half inches in size, which ran around the building, to which the sides and rear were fastened. This angle iron was embedded in the concrete base of the building to the extent that it was hidden from view.

In the case of *Dudley v. Hurst,* 67 Md. 44, 8 A. 901, 902, regarded as the leading case in this state upon the subject under consideration, one Thomas Clagett, the owner of a

farm in Prince Geoorge's County, upon which he had erected a factory for canning fruits and vegetables, mortgaged his farm in July, 1883, to one William B. Bowie. The farm was thereafter, in April, 1885, sold under the mortgage. In March of 1885, Clagett executed a mortgage upon the machinery in the factory, and when in September of that year the mortgagee was about to sell the machinery, under the last named mortgage, a preliminary injunction was obtained by the purchaser at the sale under the earlier mortgage of July, 1883. The question in that case, like the one here presented was: "Whether the machinery in the canning factory passed to the complainants under the mortgage of July, 1883, or in other words, whether such machinery, as between the mortgagor and mortgagee, were or were not fixtures?" The court, speaking through Judge Stone, in that case said:

"The term 'fixture' is generally used in reference to some originally personal chattel which has been actually or constructively affixed either to the soil itself, or some structure legally a part of such soil.

"The tests by which a fixture is determined are generally these:

'(1) Annexation to the realty, either actual or constructive;

"(2) adaptation to the use of that part of the realty with which it is connected;

"(3) the intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article annexed, the situation of the party making the annexation, the mode of annexation, and the purpose for which it was annexed. *Ewell, Fixt.; Tyler, Fixt.; Jones, Mortg.*

"Of these tests the most important is the question of intention. This is clearly shown by the fact that the law is very different between landlord and tenant and mortgagor and mortgagee, or, what is the same, vendor and vendee; many things being held as fixtures between vendor and vendee which do not lose their character of personal chattels when the question is between landlord and tenant."

The court, after applying the above stated tests to the evidence produced in that case, reached the conclusion that the canning house machinery was annexed to the soil, some actually and some constructively, and, because of that fact, the machinery was a fixture or fixtures, covered by the lien of the mortgage of 1883.

The law as stated in *Dudley v. Hurst, supra,* has been followed and approved by a long unbroken line of decisions of this court. *Warren Mfg. Co. v. Baltimore,* 119 Md. 204, 86 A. 502; *Central Trust Co. v. Arctic Ice Co.,* 77 Md. 202, 26 A. 493; *Mt. Vernon Co. v. Continental Tr. Co.,* 121 Md. 167, 88 A. 103, 974; *Abramson v. Penn,* 156 Md. 186, 143 A. 795; *Wurlitzer Co. v. Cohen,* 156 Md. 368, 144 A. 641. While the authorities elsewhere are in hopeless conflict on this subject, the law as enunciated in *Dudley v. Hurst, supra,* is recognized as the established law of this state, and this court has no disposition to depart therefrom. It is true that in *Wurlitzer v. Cohen, supra,* reference was made to conflicting decisions elsewhere, but they were not referred to with the view of adopting them in this jurisdiction.

This case, like *Dudley v. Hurst, supra,* is not a case between landlord and tenant, but must be decided upon the relations existing between mortgagor and mortgagee. It is, however, unlike the case last cited, in the fact that the thing claimed to have been a fixture was not upon the land at the time of the execution of the mortgage, but this does not affect the question here to be decided. Fixtures and improvements placed upon the mortgaged premises after the execution of the mortgage become subject to the lien of the mortgage, as much so as those fixtures which were upon the property at the time of the execution of the mortgage. 27 Cyc. 1145; 41 C. J. 485; *Meagher v. Hayes,* 152 Mass. 228, 25 N. E. 105; *Gates v. De La Mare,* 142 N. Y. 307, 37 N. E. 121; *McKim v. Mason,* 3 Md. Ch. 186; *Soller v. Macmillan,* 147 Md. 580, 128 A. 356. Quoting, for the sake of convenience, from the syllabus in the last-cited case, it is said: "In determining whether articles are fixtures as between the mortgagor and mortgagee of land, it is immaterial

whether they were installed upon the land before or after the execution of the mortgage."

When the tests stated in *Dudley v. Hurst, supra,* are applied to the facts of this case, we cannot escape the conclusion that the garage when erected was annexed to the realty and became a part of the freehold, and was fully covered by the lien of the mortgage to the Harlem Park Building & Loan Association.

The property upon which the garage was erected was occupied by its owner as a home or dwelling, and we think it may be reasonably inferred that the building was placed thereon to house his privately used automobile, and it may also be inferred, from the manner of its annexation and the purpose for which it was annexed, that it was not intended to be a mere temporary structure, but a permanent accession to the freehold for the use of the property. We cannot conceive of any garage, or other building ordinarily classed as a fixture, or as a part of the freehold, that could be any more securely or completely attached thereto, than was the garage in this case. If it was not to be regarded as a permanent fixture or as annexed to the freehold, we cannot imagine one that could be so regarded. It would seem that every precaution was taken to securely annex it to the soil, with the view that it should permanently remain there. In the first place, the base or floor was made of concrete six inches thick, and at the corners, and between them on the sides, were concrete piers sunk into the ground a distance of three feet, with steel columns, extending into these piers, a distance of fourteen inches. In addition thereto, the walls on the sides and the rear were embedded in the base or concrete floor a distance of several inches, and to still further secure the structure in its location, iron angles attached to the posts were sunk beneath the surface of the base or floor of the building.

The claim as now made by the appellant, as disclosed by its brief, is not for the entire sum of $607.50, the amount of the lien filed, but only for "the portable building, which has an agreed value of one hundred fifty dollars," excluding, it would seem, the cost of material and labor furnished in

laying the concrete piers, and floor, and the claim is made that so much of the structure may be removed without material injury to the property. To do this it will be necessary to cut off each of the steel columns, at the top of the piers, and then to raise from the concrete base or floor the side and rear of the building, which are embedded in the concrete base a depth of several inches, and this could not be done without breaking the cement base to the depth to which the walls are embedded therein. All this, we think, could not be done without material injury to the property, but, assuming that it could, the concrete piers and base or floor would still be there. In determining whether the garage could be removed without material injury to the property, the removal of the whole and not a part thereof should be considered. It is therefore difficult to conceive that the garage could be removed without material injury to the freehold; if so, most any building generally classified as a fixture could be removed without such injury.

The evidence discloses that, at the time the garage was erected upon the premises, Vaile & Young, the contractors, not only had constructive but actual knowledge of the existence of the mortgage held by the Harlem Park Building & Loan Association, yet no effort was made by them to obtain the consent of that association for the erection of the garage thereon by them, subject to the right of removal, in case of default in the terms of the contract by Payne and wife, the owners of the property. The provision inserted in the contract that "the title to the building * * * no matter whether or by what manner or degree it may be attached to the realty, shall not pass to us, until the aforesaid mortgage has been released," has no binding effect upon the mortgagee, the Harlem Park Building & Loan Association; its consent thereto not having been obtained. *Clary v. Owen*, 15 Gray (Mass.) 522; *Hunt v. Bay State Iron Co.*, 97 Mass. 279; *Hopewell Mills v. Taunton Savings Bank*, 150 Mass. 519, 23 N. E. 327; *Tarbell v. Page*, 155 Mass. 256, 29 N. E. 585; *Medford Trust Co. v. Priggen Steel Garage Co. (Priggen Steel Garage Co. v. Medford Trust Co.)* 174 N. E. 126, 127, re-

cently decided by the Supreme Judicial Court of Massachusetts.

Our attention has been called to the two cases last cited. Both of these cases were actions of tort and the appeals were from orders of the appellate division, dismissing the reports by a special justice who heard these actions. In those cases the garage company made a contract in writing with the owner of certain lots of land to deliver and install steel garages of the size mentioned, with the provision in the contract that the title to all material and fixtures should remain in the vendor until all payments called for by the contract were made, and upon failure of vendee to make any payment called for by the contract, the vendor might remove all such material and fixtures from the premises upon which they were placed. Among these lots were lots Nos. 21 and 22. These lots were, at the time of the execution of the contract, subject to a mortgage held by the trust company. The trial judge, in his report as to the garage on No. 21, stated that it was a metal garage, placed on six concrete piers, embedded in the ground and projecting about six inches above the ground, "which piers were erected by another contractor. This garage was not bolted down to the piers. It was simply resting on the piers and no floor was ever laid. * * * This garage was not physically attached to the realty in any way." In respect to the garage on lot No. 22, he stated that "it was placed on concrete piers, as in the other case, that 'the sills of the garage were fastened down to each pier by a removable nut which operated on a threaded bolt embedded in each pier,' that 'sometime after the garage was erected the owner had a concrete floor put in by another contractor, which cemented in part of the lower sill of the garage' and that 'to remove the garage it was necessary to break the cement floor slightly to release the sills.' " In each case the judge ruled that " 'by the contract * * * title to the garage remained' in the garage company, and that the 'garage * * * was never part of the realty,' but 'was personal property and a removable chattel.' " The court then said: "Such a garage does not fall on the one hand within the class of property which is real estate as

matter of law, because 'so affixed' thereto 'that its identity is lost, or so annexed that it cannot be removed without material injury to the real estate or to itself,' nor, on the other hand, within the class of articles which are personal property as matter of law. * * * The so-called 'rulings' of the trial judge obviously were findings and rulings. * * * His finding, expressed in various forms, that the garages were not parts of the realty, means that the question of fact involved was decided against the trust company. * * * We cannot say that this finding was not warranted. We do not know precisely what was disclosed by the view taken by the judge. There is nothing in the report in either case to indicate that the garages were specially designed for use on these premises or were peculiar in pattern, nor that the piers were not as well adapted to support other garages. The view may have shown the contrary. * * * It could have been found also that they were removable easily without injury to themselves or to the piers upon which they rested."

It will thus be seen that the question whether or not the garages were so annexed to the freehold so as to destroy their characteristics as personal property was not decided by the court, as the decision of the trial judge on that question was not reviewed by it; but, in any event, the facts of those cases, upon which the question whether the improvements were fixtures or not was to be determined, are entirely different from those in this case, and we do not think we should at all be controlled by them.

As the chancellor, in our opinion, committed no error in the passage of the order appealed from, the order will be affirmed.

*Order affirmed, with costs.*