HOMESEEKERS' REALTY COMPANY *v.* SILENT
AUTOMATIC SALES CORPORATION, TO THE
USE OF TIMKEN SILENT AUTOMATIC COMPANY.

[No. 45, October Term, 1932.]

*Decided January 10th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander* and *Nathan Patz,* for the appellant.

*Edward L. Putzel,* with whom was *Julius H. Wyman* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

On July 16th, 1930, Peter Hall and Neruda J. Hall, his wife, entered in a contract with the Welsh Construction Company, a body corporate, by which the latter agreed to sell to the husband and wife a leasehold interest in a lot of land which was improved by a dwelling house. The purchase price was $6,425, on which $500 was paid at the time of the sale; and it was stipulated that the purchasers were to procure an additional payment of $4,290 from a specified building association, which was to be given a first lien under a mortgage deed which would require of the purchasers a weekly payment to the mortgagee of $18.20 to cover dues, interest, and weekly proportion of taxes and ground rent charged against the leasehold estate. The vendor was to take a second mortgage lien on the property for the residue of

$1,635, payable in four years. The date of the transfer of the property was on or before October 1st, 1930.

The husband was a seafaring man, and unemployed, so the vendor temporarily waived the performance of the contract and agreed to give the vendees possession on their paying $12.50 a week on the contract price until the husband would go to sea. Accordingly, the vendees went into possession on September 28th, 1930, without the deed for the leasehold interest and, consequently, without the mortgage liens having been executed. The vendees on July 26th, 1930, had agreed with the Silent Automatic Sales Corporation for the installation of an oil burner in the premises which they had agreed to buy; and, in performance of this contract, the installation was made in September, 1930.

The nature of the subject-matter was not such that, by its being merely placed in position for service, it, necessarily, became incorporated into and a part of the realty by the act and manner of annexation, but left the question whether or not it was a fixture for determination upon the particular circumstances of the installation. The intent of the parties and the manner of the annexation to the freehold are of major importance in the solution of this problem. The stipulation in the agreement between the sales corporation and the buyers is that the burner and equipment should be and remain personal property, no matter how attached to the premises; and that, meanwhile, the title and ownership of the apparatus remained in the seller, until the entire purchase price had been paid; and that if the purchasers should default in any payment when due, the seller had the option to take possession of the burner and its equipment, or any of its parts, and, afterward, to hold them absolutely free of all claims of the purchasers, and to retain all payments made as rental and as compensation for the use, wear, and tear of the burner and its equipment. By these explicit provisions the contracting parties make clear that, notwithstanding its adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated, the apparatus sold was not to lose its quality

of personalty, so far as the contracting parties were concerned, until the purchase price had been fully paid. *Baldwin v. Francis,* 118 Md. 177, 181, 84A. 346.

The contract of purchase and sale of the oil burner and equipment was subsequent to the sale and purchase of the leasehold estate, whose vendor was, however, not a party to the agreement to buy the oil burner and neither consented nor acquiesced in its making; so it is not bound by the terms of the agreement with respect to the apparatus installed. *Northern Cent. Ry. Co. v. Canton Co.,* 30 Md. 347, 353; *Walker v. Schindel,* 58 Md. 360, 364; *Central Trust Co. v. Arctic Ice Machine Mfg. Co.,* 77 Md. 202, 26 A. 493; *Bankers' & Merchants' Credit Co. v. Building & Loan Assn.,* 160 Md. 230, 153 A. 64; *Dudley & Carpenter v. Hurst, Miller & Co.,* 67 Md. 44, 49, 8 A. 901; *Warren Mfg. Co. v. Baltimore,* 119 Md. 188, 200, 201, 86 A. 502; *Solter v. Macmillan,* 147 Md. 580, 587, 128 A. 356.

These were the relations of the several interested parties when the vendees of the leasehold estate found they could not maintain their reduced weekly payments on the purchase price, and surrendered possession to the vendor in August, 1931, and notified the representative of the Silent Automatic Sales Corporation that they could not continue to pay the weekly installments undertaken when they bought the oil burner, and gave a key of the house to an agent of the sales corporation, so that access to the premises might be had for the purpose of removing the oil burner. When the sales corporation received the key, the vendees owed $164.14 on the purchase price of $395.70 for the oil burner and accessories, and the agent of the sales corporation attempted to have the owner of the leasehold estate assume the payment of this residue and thereby acquire title to the chattels. The proposition was taken under advisement, and rejected on the theory that the chattels had become fixtures by annexation. Shortly thereafter the sales corporation brought an action of replevin against the Homeseekers' Realty Company of Baltimore to recover the chattels sold; the sheriff seized and removed the

oil burner, tank, and equipment burner from the premises and delivered these articles to the plaintiff. The next step was a petition by the realty company moving for a return to it of the chattels upon the filing of a *retorno habendo* bond. The plaintiff assented to the granting of the prayer of the petition, without prejudice to its rights, and the court so authorized the return; the bond was filed and the chattels returned to the realty company, which filed pleas of *non cepit,* of property in the defendant, and of property in the original buyers, Peter Hall and Neruda Hall.

The contract of sale of the leasehold estate was by the Welsh Construction Company as the owner, and no explanation is afforded by the record of how or when the Homeseekers' Realty Corporation acquired title, although the two corporations occupied the same office, and the realty company asserted in the motion that it was the owner of the leasehold estate. If the realty corporation was the successor in title of the construction company, the vendees were in actual possession of the premises, and this put the realty corporation on inquiry and notice of the vendees' occupancy and its nature; and, so, its rights are not superior to those of the construction company, and, therefore, it will be assumed, in the consideration of this phase of the case, that there is testimony on the record that the realty corporation is the successor in title to the construction company.

The rights of the vendor and its assignee were not shown to have been waived nor to be denied by any principle of estoppel, and are unaffected by the contract of sale of the chattels, because this contract is binding only upon the parties to the contract and their privies. The question, after the vendees had made default in the performance of their contract of purchase of the leasehold estate and, also, in the payment of the price for the articles bought, is thus narrowed to whether or not the articles, which had been annexed by the vendees of a leasehold estate while in possession of the term by virtue of their contract of purchase, but who have not yet obtained title to the leasehold estate, can be removed

by one who sold to the vendees and installed the articles so annexed, with a reservation of title until the purchase price was fully paid. The vendor or his assignee resisted the removal of the articles annexed, and, from the interest of the vendees under their contract, and their expectation of acquiring a leasehold estate by assignment in an improved lot, the burden of proof was upon them, or the seller from whom they purchased the articles, to show that these articles were not so actually or constructively annexed to the realty as to constitute a fixture. The important problem on this record is, therefore, the rights of a third party, which happens to be the vendor of the leasehold estate in the land upon which the articles sold have been annexed.

The rigor of the common law rule that any article that had become a fixture was considered as part of the freehold has been gradually relaxed as between landlord and tenant, so that articles which have been affixed to the premises by a tenant for the purposes of trade, of domestic convenience, or of ornament, may be removed by him, although, strictly regarded, they have become fixtures, provided, however, that they can be removed without serious injury to the premises. *Dudley & Carpenter v. Hurst, Miller & Co.,* 67 Md. 44, 50, 8 A. 901; *Carlin v. Ritter,* 68 Md. 478, 482-488, 13 A. 370, 16 A. 301; *Wurlitzer Company v. Cohen,* 156 Md. 368, 375, 144 A. 641. The law, however, is not the same when applied to other relations, such as, for example, vendor and vendee, mortgagor and mortgagee. *Bankers' & Merchants' Credit Company v. Bldg. & Loan Assn.,* 160 Md. 234, 153 A. 64.

The intent with which an article is annexed to the land or used in association with it is likely to be different in those cases in which one has a temporary interest in land, as a tenant, and in those in which one has a permanent interest, as vendor and vendee, one under contract to sell and one under contract to buy, and mortgagor and mortgagee of the realty. In those instances in which the attachment to the land has been made by a permanent owner, the general presumption of law is that the fixtures have become part of the realty, because most structures erected upon land by its

permanent owners are usually intended to be permanent. This presumption, however, may be overcome by direct evidence that such was not the intent of the party by whom the article was annexed, or by the stronger adverse presumption that may sometimes arise from the application of the *criteria* for determining whether the article annexed is realty or personalty. *Reeves on Real Property,* secs. 22, 23, 24, 25.

In the instant case the articles were not attached at the time of the contract to buy the leasehold estate in the land, but shortly afterwards. So, here the parties are in possession of the leasehold estate in realty under a contract to buy it, and they annex articles to the freehold and then breach their contract by failing to complete their purchase. The rule is that the articles so attached are presumed to have become a part of the realty and to remain the property of the owner of the leasehold estate. As against the vendor of the leasehold estate, the proposed vendees may obtain title to the articles by completing their contract. If they fail to do so, their resultant loss is caused by their own fault. So, the burden is upon the plaintiff here to overcome the presumption as to the character of the fixtures by positive proof of the contrary intent of the contracting parties, or by the application of any of the other *criteria,* as annexation, use, or enjoyment, in such manner as to produce a stronger adverse presumption. *Supra; Bankers' & Merchants' Credit Co. v. Bldg. & Loan Assn.,* 160 Md. 230, 234-237, 153 A. 64; *Abramson v. Penn,* 156 Md. 186, 194, 195, 143 A. 795.

To determine whether the plaintiff, as the unpaid seller of the articles constituting the oil burner, shall be first entitled to them, or whether the defendant, as the unpaid vendor of the leasehold estate to which they are attached, shall have a prior claim to them as the owner of the leasehold estate, a statement of the remaining facts in reference to the mode of attachment of the articles sold must be made.

The ground rent lot in which the vendees had agreed to buy an assignment of the original lease demised when the ground rent was created was improved by a dwelling which was heated by steam. The vendees determined to substitute

oil for coal as fuel, and an oil burning apparatus was installed. The substitution did not involve the abandonment of the subsisting method of heating by steam, and the equipment of the steam heating system was retained and utilized. The only alteration was the removal of the door and grate of the furnace, and an oil burner in the form of a pot with legs was set on the inside of the furnace and under the boiler. By taking out the oil burner and putting the stored grate and furnace door back, the former method of producing heat by steam would be completely restored. The tank for the storage of the oil was sixty-six inches long and twenty-six inches wide and twenty-four inches deep, and was supported by three legs and placed on the cement floor of the basement in a corner of the same room with the furnace and about ten feet from it. The small tubing or feed pipe of the oil burner was three-eighths of an inch in diameter, and was laid from the furnace to the storage tank in a shallow channel cut in the cement floor, whose surface was afterward restored by filling in the channel with cement to the level of the floor. An inch and a half or two-inch supply pipe and a small parallel vent pipe were carried through a hole, which had been chiseled through a nine-inch concrete foundation wall, to the exterior of the building where the vent pipe was extended upward and was fastened to the frame of the building for ten feet. A thermostat was placed in the dining room and wires extended from it, through the wall and floor of the first floor into the basement, to a device which regulated the flow of the oil to the burner, and which is called the control, and is set next to the furnace, and is connected by wire with the burner.

These facts are not in controversy, and they, with other facts offered in evidence by the plaintiff, but controverted by the defendant, tend to show that the tank, the control, and the oil burner are all portable, and are held in place upon the cement floor by gravity; and, without any damage to the building or the pipes, tubing, or any other part of the installation, may quickly and easily be disconnected and removed. On the other hand, the pipes and tubing cannot be taken out without the adjacent cement floor and foundation

wall being chiseled away and so work a destruction of that portion of the premises, but they can remain in the floor and wall without injury to the building and in readiness for the service to which they are adapted whenever any other oil burner might to installed in the future. So, although the installations of all the articles were simultaneous, the chattels which became a parcel of the freehold, because of the mode of their annexation, since they cannot be removed without injury to themselves or the structure of the building, and because of the permanent and substantial nature of their utility, since they are adapted to the similar service of all oil tanks and burners whensoever placed for use, are the pipes and tubes, while the tank, the control, and the burner are not fixtures because they were temporarily placed, since every one of the three may be taken out without injury to itself or the fabric of the building, and so may be continued in use, removed, restored, or replaced without the destruction or injury of any part of the freehold; and because their usefulness, whether as a burner, controller, or tank, is not local, since the utility of each is not peculiar to the place of installation. The circumstance that the three movable articles, although their detachability remains, are connected with immovable articles or fixtures, no more makes those movables annexed as parcel of the freehold than do the gas fixtures and ranges or the electric light fixtures and heaters become a part of the realty merely because they, although preserving their detachability, are affixed to the frequently less expensive gas pipes and electric light wires which are admittedly a part of the freehold. *Abramson v. Penn,* 156 Md. 194, 195, 143 A. 795. See *Hunt v. Mullanphy,* 1 Mo. 508; *Jennings v. Vahey,* 183 Mass. 47, 66 N. E. 598; *Towne v. Fiske,* 127 Mass. 125; *Philadelphia Mortgage etc. Co. v. Miller,* 20 Wash. 607, 56 P. 382; *Hook v. Bolton,* 199 Mass. 244, 85 N. E. 175; *Rogers v. Crow,* 40 Mo. 91; *Keage v. Hanover Fire Ins. Co.,* 81 N. Y. 38; *Vaughen v. Haldeman,,* 33 Pa. 522; *Montague v. Dent,* 10 Rich. (S. C.) 137; *Hall v. Law Guarantee etc. Soc.,* 22 Wash. 305, 60 P. 643; *Rahway Sav. Inst. v. Irving St. etc. Church,* 36 N. J. Eq. 61.

In concluding the point, it should be recalled, in connection with the mode of annexation, that the parties in possession under a contract of sale sent for the seller of the articles and delivered the key of the premises, as they wished to have the articles removed. Would it be questioned, on the group of facts now under consideration, that the parties in possession could not have taken out the oil burner, control and tank, and, replacing the grate and door of the furnace, have returned to the use of coal as a fuel, without injury to the realty and without a right of the lienor to complain? See *Jones on Mortgages* (8th Ed.), sec. 541, p. 708.

The adverse facts thus far stated must be accepted as true on the theory of the defendant's first prayer, which is a demurrer to the evidence; but the court is unable to find on the record at bar that the articles replevied were so certainly fixtures by their mode of annexation and by other *criteria* as to leave only a question of law for the court. The case was one for submission to a jury under proper instructions.

The testimony of the defendant, on the subject of an annexation of the tank, control, and burner to the freehold, was that every one of the three was permanently affixed to the basement floor by cement, and could not be removed without a destruction of that portion of the realty. In view of this contradicting testimony, the case became the more imperatively one for the jury.

The defendant's first prayer was granted as modified by the court, and the defendant had no ground of complaint for its final form. The second and third prayers of the defendant were rejected. The defendant concedes there was no error in the rejection of the third prayer, and the court finds none in the rejection of the second prayer, which was objectionable because it submitted to the jury questions upon which there was no evidence. The theory of the prayer rested upon an alleged agreement between the husband and wife with the defendant, whereby the husband and wife transferred, for a consideration, the articles to the defendant. We find no legally sufficient evidence of such an agreement

by the wife with the defendant. *Abrams v. Eckenrode,* 136 Md. 244, 249, 110 A. 468. See 2 *Poe, Pl. & Pr.,* sec. 299.

There are two exceptions on the evidence. The court's action in admitting testimony of what would be necessary to remove the oil burner and equipment from the building was clearly correct; and its refusal to grant a motion to strike out an answer which was based on hearsay does not constitute reversible error, since the court stated that he permitted it to remain because it was already in evidence. There being no error on which the judgment should be reversed, it will be affirmed.

*Judgment affirmed, with costs to the appellee.*