JAMES C. L. ANDERSON *v.* PERPETUAL BUILDING & LOAN ASSOCIATION OF GRANITE

[No. 24, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was submitted on briefs to BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*James C. L. Anderson* and *H. Richard Smalkin,* for the appellant.

*Lawrence E. Ensor,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from a decree passed by the Circuit Court for Baltimore County, in equity, sustaining exceptions filed by the Perpetual Building & Loan Association of Granite, Baltimore County, to the sale of certain machinery made and reported to James C. L. Anderson, assignee, appellant herein, upon the ground that the articles referred to in the report of sale were fixtures and subject to the lien of exceptant's prior mortgage.

The mortgage under which said articles were sold was executed by Oliver C. Putney Granite Corporation to the Baltimore County Bank on June 20th, 1930, to secure the repayment of $30,000. It was a lien on 3.22 acres of land and improvements located at Carroll Station, in Baltimore County. In addition to the land and improvements, there are also described in the mortgage certain units of machinery. Shortly before the sale on April 30th, 1936, the mortgage was assigned by Warren F. Sterling, receiver of the bank, to appellant, for the purpose of foreclosure and collection; the amount due thereon being approximately $24,000. Appellant's report shows that, after advertising the property described in the mortgage, as required by the terms of the latter, he attempted, on May 5th, 1936, to sell it at public auction, but received no offer for the real estate which he considered adequate. He did, however, undertake to sell the machinery and equipment as a whole for $3,535. To this sale, exceptions were filed by appellee, alleging: (a) That it was the holder of a first mortgage upon the premises, and by virtue thereof had a first lien upon the machinery and equipment referred to in the report of sale; (b) that the chattels referred to in the report were a part of the realty and therefore covered by its first mortgage; (c) that said articles were affixed to the realty and could not be removed without destroying the same, and their sale as reported, not being a sale of the realty, should be set aside.

It is admitted that appellee is the holder, by virtue of an assignment from the Second National Bank of Towson on February 6th, 1929, of a first $10,000 mortgage, dated

February 10th, 1925, upon the tract of real estate with improvements hereinbefore described, but in which mortgage no specific reference is made to the machinery and equipment sold by appellant. Therefore, the correctness of the decree appealed from must be determined from a consideration of (a) the actual or constructive annexation of the machinery to the realty, (b) its adaptation to the use of that part of the realty with which it is connected, and (c) the intention of the party in making such annexation to make the article a permanent accession to the freehold, which intention must be ascertained and inferred from the nature of the annexed articles, the situation of the party who annexed them, and the manner and extent of their annexation; but in determining this question of intention, the acts and declarations of a grantor made after execution of the deed cannot be received to invalidate it. *Dudley v. Hurst,* 67 Md. 44, 53, 8 A. 901, 903; *Dudley v. Hurst, supra; Warren Mfg. Co. v. Baltimore,* 119 Md. 188, 86 A. 502; *Heating & Plumbing Finance Corp. v. Glyndon Permanent Building Assn.,* 167 Md. 222, 173 A. 198; 11 *R. C. L., Fixtures,* p. 1085; 26 *C. J.* pp. 663 to 670, inc.; 2 *Devlin on Real Estate,* (3rd Ed.) secs. 1208, 1209.

We quote from the last-cited authority as follows:

"Machinery in Mills—Upon the question whether machinery in mills will pass by a deed of the premises, there is perhaps an irreconcilable conflict in the authorities. The law may be stated with a reasonable degree of certainty up to a certain point, and then, beyond that, all becomes confusion. In accordance with the general rule, that, as between grantor and grantee, the firm and substantial annexation to the freehold by the owner of articles intended for the use of the realty and requisite to its enjoyment, constitutes them fixtures, which pass by a conveyance of the land, it is generally agreed that machinery which is permanently attached to the realty, such as boilers, steam-engines, and gearing, are parcels of the realty, and will pass to the purchaser by a deed of the land. This question frequently arises be-

tween mortgagor and mortgagee. In these cases, as we have seen, the same rules apply as would if the controversy were between vendor and vendee.

"Removal without injury.—A distinction is sometimes made between the fixtures placed in a mill which are indispensable to its operation as such, and those which are used temporarily or for particular classes of work. The former may pass by a conveyance or mortgage where the latter would not. * * *"

In accordance with the views last cited, this court has held that while, as between landlord and tenant, the rule has been gradually relaxed and articles affixed to the premises by the tenant for purposes of trade, domestic convenience, or ornament may be removed by him, if such removal can be accomplished without serious injury to the realty (*Homeseekers' Realty Co. v. Silent Automatic Sales Corp.*, 163 Md. 541, 163 A. 841, 843), but Judge Parke, there speaking for the court, was careful to add:

"The law, however, is not the same when applied to other relations; such as, for example, vendor and vendee, mortgagor and mortgagee. *Bankers' & Merchants' Credit Co. v. Harlem Park Bldg. & Loan Assn.*, 160 Md. 230, 234, 153 A. 64.

"The intent with which an article is annexed to the land or used in association with it is likely to be different in these cases in which one has a temporary interest in land, as a tenant, and in those in which one has a permanent interest, as vendor and vendee; one under contract to sell and one under contract to buy; and mortgagor and mortgagee of the realty. In those instances in which the attachment to the land has been made by a permanent owner, the general presumption of law is that the fixtures have become part of the realty, because most structures erected upon land by its permanent owners are usually intended to be permanent." See, also, *Bankers' & Merchants' Credit Co. v. Harlem Park Bldg. & Loan Assn.*, 160 Md. 230, 153 A. 64.

In *Dudley v. Hurst, supra*, this court, in adopting the

doctrine of constructive annexation, used this language: "From the general current of decisions the following principle seems clearly deducible: That where, in the case of machinery, the principal part becomes a fixture by actual annexation to the soil, that such parts of it as may be not so physically annexed, but which, if removed, would leave the principal thing unfit for use, and would not of itself, and standing alone, be well adapted for general use elsewhere, is considered constructively annexed."

Applying these principles to the facts in this record and further considering that we are dealing with a case between mortgagor and mortgagee, we are of the opinion that the decree sustaining exceptions to the sale of the machinery was proper.

It is established that the original building was erected in 1924 for the express purpose of conducting the business of sawing, polishing, and converting rough granite into a finished product for commercial purposes. At first it was but 250 feet long and 40 feet wide, with a small building on the outside attached thereto to house a compressor. Later, one end of the building was torn out, and the building was extended a distance of 50 feet. The compressor building is 20 by 40 feet, and on one side of this is a boiler and on the other a large room housing the carborundum saw, and a shed 130 feet long and 16 feet wide, while next to this building is a small office. There is another building 40 by 45 feet for the purpose of housing the gang saw. All of these buildings are of frame construction on concrete foundations and covered with corrugated iron. About 15 feet above the ground are tracks, running the entire length of the building, that carry the crane. These are attached to the top of girders, in turn supported by joists which are bolted on the girders. The rails are supported by 12 by 12 pine posts running directly under the tracks every 15 feet and placed there to carry the crane. Electric cables run around and through the building, water pipes run beneath it, and these carry water to some of the machines. There are also pipes running through the entire building which bring air from the

compressor to the drills and polishers. The main building was erected for the operation of a stone-cutting business, and according to the testimony of the plant foreman was built to house the crane and compressor, while the other buildings were put there to hold the various machines. There was also testimony to the effect that the removal of the machinery would ruin the property, necessitating digging up foundations, which would be very costly. The machinery mentioned in the report of sale was connected up as a part of the plant at the time the first mortgage was taken by the Second National Bank of Towson, with exception of the carborundum plant and the gang saw, which were added to the equipment prior to the execution of the second mortgage, and also prior to the assignment of the first mortgage. The drills were installed prior to the execution of the first mortgage, and are a part of the entire system, since it is essential to have them in order to carry on the business. The compressor, which weighs from five to six tons, rests on a concrete foundation 7 feet deep, 5 feet and 10 inches of which is in the ground, connected with twelve 1¼-inch bolts 4 feet long and embedded 4 feet in concrete, the base of which is 8 feet 6 inches by 7 feet. In order to remove the compressor, it would be necessary to tear away a part of the building, and the compressor would be useless if the cables and pipes installed for feeding it were removed.

There can, then, be no question that the majority of these units of machinery were permanently affixed to the soil and, therefore, became fixtures. It is also plain that there removal at this time would practically result in wrecking and demolishing the building in which they are placed. While this situation does not pertain to the crane, drills, and perhaps some minor units, all of these are integral parts of the entire system used for cutting granite, and they occupy such relation to the machinery permanently annexed to the soil that to disconnect and remove them would render useless such other units, and there being an entire absence of evidence to show that the units not permanently attached to the soil would of

themselves and standing alone be well adapted for general use elsewhere, they must be classed as constructively annexed to the realty.

*Decree affirmed, with costs to appellee.*