## DERMER *v.* FAUNCE ET UX.

[No. 21, October Term, 1948.]

*Decided November 11, 1948.*

*Motion for Reargument denied, and Memorandum thereon filed, December 16, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*R. Lewis Bainder* for the appellant.

*Forrest Bramble* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellees in this case, the owners of a store and residence at 2301 Edmondson Ave., in Baltimore City, entered into a contract on February 15, 1946, with one Gerald Golden, as general contractor, for improvements to the property for the sum of $8,000. The appellant, a registered plumber, entered into a sub-contract dated March 15, 1946, with Golden to furnish materials and labor in the installation of plumbing and a complete heating system on the premises for the sum of $1,500, payable in installments as specified work was completed. There were no contractual relations between the owners and the sub-contractor. Golden was to complete all the work by April 15, 1946, but failed to do so. On May 15, 1946, the owners cancelled their contract with Golden and ordered Dermer off the premises. Dermer thereupon brought an action of replevin against the owners for five radiators, two unit heaters, one Teco hot water heater and certain loose pipes and fittings placed on the premises by Dermer. The Sheriff scheduled the property, and valued it at $125, whereupon the defendants applied for and obtained a writ of *returno habendo*. An appeal from that order was dismissed as premature. *Dermer v. Faunce*, 187 Md. 610, 51 A. 2d 76. Upon trial of the case the Court submitted special issues to the jury, and the jury found that on May 15, 1946, four of the radiators were "physically attached to the permanent piping in said house", but could be removed without damage to the building, and that the two unit heaters were not physically attached. The undisputed testimony showed that none of the other material had been attached. The radiators, which were not new, were of a standard type, not

especially adapted to the premises. It was undisputed that Dermer had not been paid for any of the material in question by Golden or Faunce, and that the plant was not in operable condition. In fact, Dermer never purchased the oil burner contracted for, and never installed the boiler. Dermer testified that he paid for all of the material in question and ordered it sent to the premises, but denied that he had attached the radiators or authorized anyone to do so; when he went to the premises with the Sheriff he found that four of the radiators had been attached "hand tight" to the piping. Faunce testified that he saw Dermer "hook up" the four radiators. The issue of fact as to who attached the radiators was not resolved by the jury's findings. The court found a verdict in favor of the defendants, overruled a motion for judgment n. o. v. and entered judgment in favor of the defendants for a return of the goods or their value.

In an opinion filed in the case, the court took the view that title to all of the material passed to the owners, or to the general contractor, upon delivery to the premises, relying upon the decision of this court in *Richardson v. Saltz*, 127 Md. 388, 96 A. 524, 525. In that case Saltz and wife, the owners, contracted with Hobson for the erection of a building. Hobson contracted with Richardson for the furnishing of stone, which was consigned to Hobson. Upon breach by Hobson, the owners completed the building, using the stone delivered to the premises. More than sixty days after delivery, Richardson gave notice of intention to claim a mechanic's lien. It was held that the notice was too late. The court said (p. 392) : "It plainly appears that there was an absolute sale and delivery to Hobson, and we find no facts stated which would justify us in finding Hobson was acting as the agent of the appellees. The fact that they took possession of the building, including the stone already used as well as that not used, cannot change the relations of the parties, so far as the application of this statute is concerned. The title to the stone had forever passed from the appellants, and their right to compensation was conditioned

upon the payment by Hobson or upon their perfecting their lien according to the mandate of the statute."

The case is readily distinguishable. In the case at bar there was no sale of material to Golden or consignment to him, nor was he obligated to pay for the material until it had been properly installed in the building. Rule 2, section 37 of Article 83 of the Code, §19, Uniform Sales Act provides: "Where there is a contract to sell specific goods and the seller is bound to do something to the goods for the purpose of putting them in a deliverable state, the property does not pass until such thing be done." It has been held, under the corresponding section of the Uniform Sales Act, that title to machinery delivered to the buyer's premises under a contract to install, did not pass to the buyer. *Sliter v. Creek View Cheese Factory,* 172 Wis. 639, 179 N. W. 745. See also *Williston, Sales,* Rev. Ed., § 265. We are unable to find anything in the contract between Dermer and Golden to indicate that the parties intended title to pass by mere delivery of material to the premises, or by anything short of physical annexation.

The appellees contend, however, that regardless of the intention of the parties to the installation contract, and in the absence of any contractual relation between Dermer and the landowners, the latter acquired title to all the material in question by operation of the law of fixtures, *i. e.,* by annexation or constructive annexation. The rigors of the common law rules as to fixtures have been generally abated in the case of landlord and tenant or trade fixtures. On the other hand, as between vendor and vendee, or mortgagor and mortgagee, they have been applied (*Schofer v. Hoffman,* 182 Md. 270, 34 A. 2d 350, and cases there cited), and even extended to include accessories, not physically attached but essential to the operation of the principal machinery in a manufacturing plant, which are said to pass by constructive annexation. *Dudley v. Hurst,* 67 Md. 44, 8 A. 901, 1 Am. St. Rep. 368; *Solter v. Macmillan,* 147 Md. 580, 128 A. 356; *Anderson v. Perpetual Building & Loan Ass'n,* 172

Md. 94, 190 A. 747, 109 A. L. R. 1419. In such cases the most important test is the intention of the parties, as gathered from the agreement, the nature of the subject matter and the conduct of the parties. The fact that particular articles are readily detachable without damage to the realty and may be used elsewhere are factors to be considered, although not controlling. Compare *Homeseekers' Realty Co. v. Silent Automatic Sales Corporation,* 163 Md. 541, 549, 163 A. 841, and *Abramson v. Penn,* 156 Md. 186, 195, 143 A. 795, 73 A. L. R. 742. We have found no Maryland cases directly in point upon the question, as between a builder and an owner.

In *Dame v. Wood,* 75 N. H. 38, 70 A. 1081, 1082, there was a contract to install a heating plant, but the building was destroyed by fire before the work was completed. In holding that the landowner was liable to the contractor for the labor and materials put into the work, the court found that both parties understood "at the time the contract was made and thereafter, that from day to day as the work progressed, as fast as any portion of the boiler, piping, and radiators had been set up and connected in its proper place, it was not thereafter to be removed." In *Munroe v. Armstrong,* 179 Mass. 165, 60 N. E. 475, where a subcontractor removed partially installed plumbing, after default of the general contractor, this was held to be a tortious act, but it was held that he was within his rights in removing unattached material delivered to the premises. See also note 69 *L. R. A.* 892.

In the case at bar we think the doctrine of constructive annexation is not applicable, and cannot effect a conversion of the unattached materials into realty. It is conceded that the built-in portions of the plant lost their character as personal property. The four radiators that were attached "hand tight" present a more difficult question. If they were attached by someone other than Dermer or his authorized agent, it seems clear that Dermer would not thereby lose his right to possession. See *Tiffany, Real Property,* 3d Ed., § 606, p. 559. While the testimony as to who made the connection is conflicting,

we think the undisputed testimony that they were not tightened with a wrench, and were not connected to the boiler, indicates that they had not yet lost their character as personal property. Something remained to be done by Dermer before they were in operable condition and ready for acceptance by the landowners.

*Judgment reversed and entered in favor of the plaintiff for the property replevied or its value in the sum of $125, with costs.*

## MEMORANDUM ON MOTION FOR REARGUMENT

HENDERSON, J.

On motion for reargument, it is urged that the statement in the opinion that Dermer had not been paid for "the material in question" by Golden or Faunce, is inaccurate because Dermer admitted the receipt of $600.00 from Golden. This payment, however, was not referrable to the unattached material which was the subject of the suit. Under the contract between Dermer and Golden, $500.00 was payable when the contract was signed, and $100.00 as a progress payment. We adhere to the view expressed in the opinion that Golden was not "obligated to pay for the material until it had been properly installed in the building", and that the parties did not intend title to pass "by mere delivery of material to the premises, or by anything short of physical annexation."