UNITED STATES of America,
Plaintiff,

v.

RALEY CONTRACTING COMPANY,
Inc., Defendant.

No. E–C–13–61.

United States District Court
N. D. Mississippi, E. D.

Aug. 6, 1962.

H. M. Ray, U. S. Atty., Oxford, Miss., for plaintiff.

Thomas J. Tubb, West Point, Miss., for defendant.

CLAYTON, District Judge.

This is a suit by the United States instituted against Raley Contracting Company, incorporated [1] to collect taxes, admittedly owing by W. L. Wells. Plaintiff attempts enforcement of a lien it claims by reason of levies made against Raley to subject to payment of said taxes debts plaintiff claims were payable by Raley to Wells. Against plaintiff's claims the assertion is made that Raley owed Wells nothing at the time of the levies and has owed him nothing since. Facts necessary to disposition are without dispute.

Plaintiff's first levy was made on Raley on February 25, 1959. A second levy was made on May 4, 1959, for $5,-128.44. This amount included the amount which was the subject of the first levy. If on either of the dates when the levies were made Raley owed Wells any amount then or since payable as of right to Wells, plaintiff must prevail.

1. Defendant is now bankrupt and with its assets in the hands of a receiver.

However, if Raley did not owe Wells anything on either of said dates and has since not owed Wells anything, then plaintiff's suit must fail. This seems a concise but perhaps basic general statement of the underlying issues.

Wells was a subcontractor to Raley, which was the prime contractor, on six construction projects for public works being undertaken for public agencies. Raley had the contracts with the public agencies in its name, and Raley with the surety on its performance bond were responsible to the owners (the public agencies) for the completion of the work contemplated by the contracts in accordance with the plans and specifications therefor. Work on these projects was undertaken by Wells pursuant to separate contracts between Raley and Wells. Five of these projects were completed by Wells and accepted by the owner. (One of these projects was completed by Raley and his surety after Wells became hopelessly involved thereon, as will be mentioned later.) The five completed by Wells with pertinent dates are as follows:

| PROJECT | DATE OF PAYMENT TO RALEY | WELLS' PART (Contract) |
| --- | --- | --- |
| Lake Monroe | May 2, 1959 | $1,211.63 |
| Clay County | December 8, 1959 | 822.88 |
| Pickens County (255) | December 31, 1959 | 2,674.56 |
| Pickens County (898) | February 12, 1959 | 2,828.88 |
| Pickens County (3241) | February 12, 1959 | 1,829.86 |

Under the contracts between Raley and Wells, payment was to be made by Raley to Wells of his part of final payments fifteen days after such payments were received by Raley. Thus, for example, the earliest final payment to Raley shown above, which was on February 12, 1959, would have required Raley to pay Wells his part no earlier than February 27, 1959. This date was the first date, with respect to the aforementioned four projects, upon which Wells could have demanded payment from Raley in any event.

The sixth project for which the contract was taken in Raley's name and on which Wells was the subcontractor, as aforementioned, was a rather large highway construction project undertaken for the State Highway Department of Mississippi in Simpson County. In December, 1958, Wells told Raley's president that he could not continue with the Simpson County job unless defendant furnished him substantial amounts of money for payrolls and other expenses. In January, 1959, Wells again told defendant that he was through. In January, 1959, and again on February 24, 1959, defendant's president visited the site of the Simpson County project to determine what yet remained to be done. As a result of these inspections, defendant estimated that it would cost it between forty and fifty thousand dollars, over and above remaining contract payments to be made by the owner, to complete the contract.

Nine days before the first of the final payments heretofore listed was received by defendant, Wells wrote defendant that he could not finish the Simpson County contract "unless you can advance me with weekly payrolls and haulage and some additional money with which to pay local bills".

"I am sending you, under separate cover, a list of bills giving the amount and the parties to whom due, for labor, materials or supplies furnished on this project."

On February 9, 1959, Wells sent the list of bills which totaled $11,291.46.

On February 11, 1959, Wells sent defendant another such bill amounting to $1,339.08.

The substance of the foregoing is that Wells told defendant that he would not undertake completion of the contract unless defendant advanced money to pay for labor, materials and supplies used by Wells therefor. At February 11, 1959, the known bills then amounted to $14,058.19. And, it was then known, as a result of the notice given in December, 1958, by Wells to defendant and as a result of the January visit of defendant's president to the project site that a great deal more money would be required to support completion of this contract. Thus, it is clear that no later than February 11, 1959, defendant knew that it would owe Wells nothing by reason of the forthcoming collections to be made on the five projects heretofore listed, but that, on the contrary, Wells would ultimately owe defendant a great deal more than the $5,326.83 which was afterward to be collected as Wells' part on the four mentioned projects. Before the date of the first final payment on the four above listed projects (February 12, 1959) defendant and Wells both knew that there was only $11,557.43 retainage held on the Simpson County project by the Highway Department.

On March 13, 1959, defendant wrote Wells that defendant was taking over for completion the Simpson County project. On 1 June, 1959, defendant began working on this project and completed it, together with certain overrun (work over and above that specified by the contract). Completion of this project was effected at a loss to defendant and its surety on its performance bond therefor, far in excess of the amounts which were nominally payable to or creditable to Wells under the four projects which were completed by him.

Plaintiff cites five sections of the Internal Revenue Code[2] and one Treasury Regulation[3]. The claim is that Wells had a right to the four payments above listed as "Wells' part" at the time of the levies or that such a right accrued to him thereafter. The cases of United States v. Graham, D.C., 96 F.Supp. 318 (1951); aff'd, State of California et al. v. United States (9 Cir. 1952), 195 F.2d 530; cert. denied, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647 (1952) and Bank of Nevada v. United States (9 Cir. 1957), 251 F.2d 820, cert. denied, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958) are cited as supporting plaintiff's view that set off is not available against a claim for taxes due the United States. However, the basic question is here: "Did Raley owe an enforceable debt to Wells at the time of the levies made by plaintiff or has Raley owed Wells such a debt since?" This might be simply stated: "On February 12, 1959, or at any time thereafter, could Wells have sued Raley successfully for the amounts shown as 'Wells' part' for the five projects heretofore listed?" The answer must be no. At the time the first of those final payments was made to Raley, it and Wells both knew that Wells then owed Raley more than the amounts paid to Raley as the final payments on the four contracts completed by Wells. They also knew that Raley or its surety or both stood to lose $40,000 to $50,000 in the completion of the Simpson County contract.

In these circumstances it seems clear that Wells could not have maintained against Raley, at the date of the first levy (February 25, 1959) nor at any later date, an action for his part of the final payment for the five jobs which he completed. Hence, since the levies could get for plaintiff from Raley no more than Wells could have gotten, plaintiff has no case.

■ The law of Mississippi controls on the question of whether Raley was " * * * in possession of or obligated with respect to, property or rights to

---

2. Sections 6321, 6322, 6323, 6331, 6332, Title 26 U.S.C.

3. Reg. 301.6331–1(a) 1.

property subject to levy * * *" belonging to Wells.

In Aquilino et al. v. United States et al., 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), the Supreme Court said:

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer [has] 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to the state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * sought to be reached by the statute.' Morgan v. Commissioner, 309 U.S. 78, 82 [60 S.Ct. 424, 84 L.Ed. 585, 589].

"Thus, as we held only two terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law * *. United States v. Bess, 357 U.S. 51, 55 [78 S.Ct. 1054, 2 L.Ed.2d 1135, 1140]."

At any time after Wells sent the bills for the Simpson County project to Raley on February 9 and 11, 1959 (which is at least 14 days before the first levy with which we are concerned), if Wells had sued Raley for what is called "Wells' part" herein, Raley could have set off against the claim by Wells a sum greater than any amount which Wells could legitimately have claimed. Section 1481, Mississippi Code of 1942; Shapleigh Hardware Co. v. Brumfield, 159 Miss. 175, 180, 130 So. 98, 132 So. 93. See also Graves v. Hull, 27 Miss. 419; Bettman-Dunlap Co. v. Gertz, 149 Miss. 892, 116 So. 299 and United States v. Bank of United States, D.C.N.Y., 5 F.Supp. 942.

■ It almost goes without saying that Wells could never have demanded the retainage of $11,557.43 held by the State Highway Commission on the Simpson County project. The contract between Raley and the State Highway Commission (by which Wells is bound) provides that a percentage of earnings under the contract would be withheld by the Commission until completion of the contract and the making of the final estimate. Raley (and its surety) became subrogated to all rights of Wells to this retainage when they were compelled by Wells' default to take over completion of this contract. Section 8041, Mississippi Code 1942, Recompiled; State for Use of National Surety Corporation v. Malvaney, 221 Miss. 190, 72 So.2d 424, 43 A.L.R.2d 1212 and Mid-South Paving Company et al. v. State Highway Commission, 197 Miss. 751, 20 So.2d 834, 21 So.2d 646, 22 So.2d 497.

Order may be prepared for entry in accordance with this opinion dismissing the complaint. This order should provide for substitution of the receiver for Raley as the party defendant in accordance with the court's understanding that the parties have so stipulated informally heretofore.