**UNITED STATES of America**

v.

**AKRON MECHANICAL CONTRACTORS, INC.**

and

**Aetna Casualty and Surety Company.**

**Civ. A. No. 18104.**

United States District Court
D. Maryland.

Jan. 22, 1970.

Stephen H. Sachs, U. S. Atty., and Alan B. Lipson, Asst. U. S. Atty., Baltimore, Md., and Richard A. Scully and Sidney Bixler, Dept. of Justice, Washington, D. C., for the United States.

William A. Fisher, Jr., Baltimore, Md., and Alexander M. Heron, Washington, D. C., for defendant Aetna Casualty and Surety Co.

NORTHROP, District Judge.

In this action the United States seeks to have Akron Mechanical Contractors, Inc. (Akron) adjudged liable for unpaid federal income withholding and Federal Insurance Contribution Act taxes and to assert a lien on certain property allegedly belonging to Akron. Both sides agree that a determination of Akron's property interest in the property levied upon will resolve this dispute. On cross motions for summary judgment, this court concludes that Akron had no interest in the property in question at the time of the assessment.

The parties submitted a stipulation of facts and the following statement is taken from that and from admissions in the answer. In November, 1961, Dorset Contracting Company (Dorset) entered into a contract with the state of Maryland for the renovation of a hall of the University of Maryland. Dorset then entered into a subcontract with Akron for the plumbing, heating, ventilating and air-conditioning work involved in the renovation. Akron began work in January, 1962. In the course of work, Akron had materials furnished by suppliers delivered to the job site. The practice was for Akron to bill Dorset for materials delivered on a monthly basis and for Dorset to pay for the materials as billed. On August 10, 1962, following a dispute between Dorset and Akron, Dorset terminated the subcontract. On August 13, 1962, the Internal Revenue Service assessed Akron for unpaid taxes for the second quarter of 1962. On August 30, 1962, the District Director of Internal Revenue filed notice of a lien in the amount of $24,186 for the unpaid taxes and that same day he levied upon materials worth $42,765 located on the construction site.

The materials seized had been paid for either by Akron or Dorset. Of those paid for by Akron some had further been billed to and paid for by Dorset either before the assessment or after it. Neither at the time of assessment nor subsequently were the materials seized broken down into those paid for either initially or ultimately by Dorset and those paid for by Akron, but all were on the job site at the time of the levy. Shortly after the levy, Dorset, in order to insure that work on the project could proceed without interruption, entered into an agreement with the District Director whereby the materials were released to Dorset upon Dorset's guarantee of payment of the taxes assessed to the extent Akron was determined to have an interest in the materials. Aetna Casualty and Surety Company became a surety on Dorset's obligation to the Internal Revenue Service. Dorset continued the work on the subcontract and completed it at a loss of $268,000. Aetna Casualty and Surety Company, on the basis of its obligation to pay the assessment to the extent Akron is determined to have had a property interest in the materials seized, was made a defendant in this action by the United States. Asserting that Akron had no interest in the materials seized, Aetna has moved for summary judgment on that count. There being no dispute as to the facts or inference thereof, summary judgment is in order.

Under section 6321 of the Internal Revenue Code of 1954, a tax lien attaches to "all property and rights to property" belonging to the taxpayer. Thus, as stated in Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960),

[t]he threshold question in this case, as in all cases where the Federal Gov-

ernment asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute." Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585. Thus, as we held only two Terms ago, Section [6321] "creates no property rights but merely attaches consequences, federally defined, to rights created under state law * * *." United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L. Ed.2d 1135.

Looking then to Maryland law to determine Akron's property interest in the materials in question, the case of Dermer v. Faunce, 191 Md. 495, 62 A.2d 304, (1948) is the most analogous. The owner of certain property entered into a contract with a general contractor for the improvement of the property. The general contractor entered into a contract with a subcontractor for the installation of a plumbing and heating system. In the course of performing work on the contract, the subcontractor delivered materials to the job site. Thereafter, the owner, because of a breach by the general contractor, ordered the subcontractor off the premises and took possession of the materials. The subcontractor brought an action of replevin. The Maryland Court of Appeals held that the subcontractor was entitled to replevy the materials. The court did, however, look to the contract between the general contractor and the subcontractor to determine whether there had been any agreement as to the passing of title to the materials, but found no such agreement. The court stated:

We are unable to find anything in the contract between [the subcontractor] and [the general contractor] to indicate that the parties intended title to pass by mere delivery of material to the premises, or by anything short of physical annexation. 191 Md. at 499, 62 A.2d at 306.

Thus, Dermer v. Faunce indicates that the construction contract itself serves to determine property interests in construction materials whenever the parties so intend.

Looking to the contract between Dorset and Akron there was no explicit provision for the passing of "title" to materials delivered to the construction site. The contract did provide for partial payments for labor and materials as the work progressed and the practice prior to the termination of the contract was for Akron to bill Dorset for materials delivered to the job site on a monthly basis. The contract also provided:

*ARTICLE 20—Contractor's Right to Terminate Contract*

It is understood and agreed that if the Subcontractor should be adjudged bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed on account of his insolvency, or if he should persistently or repeatedly refuse or should fail, except in cases for which extension of time is provided, to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment for material or labor or persistently disregard laws, ordinances or the instructions of the Contractor, or otherwise be guilty of a substantial violation of any provision of this contract, then the Contractor may, without prejudice to any other right or remedy and after giving the Subcontractor five (5) days' written notice, terminate the employment of the Subcontractor and *take possession of the premises and of all materials, tools and appliances* thereon and finish the work herein contemplated by whatever

method he may deem expedient. In such cases the Subcontractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract sum shall exceed the expense of finishing the work, including compensation for additional managerial and administrative services, such excess shall be paid to the Subcontractor. If such expense shall exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor. [emphasis supplied]

Besides this termination provision, the contract contained two other provisions which relate, in some sense, to the question of title to materials. Article 16 of the subcontract provided that the architects or the general contractor may inspect materials furnished and require removal of or make a deduction from the contract price for substandard materials and article 27 provided that a certificate of acceptance or payment for materials furnished shall not constitute acceptance of materials subsequently found to be defective.

■ The Government argues that the intent of the parties as to title to materials does not appear in the contract. The Government would have this court refer to the provisions of the Uniform Sales Act, which was in effect in Maryland at the time the contract was executed, which set out presumptions as to the parties' intent as to title when no clear intent appears in the contract. In its memorandum of law submitted with its motion for summary judgment, however, the Government admits that the contract before this court was a contract for the installation of complete systems and not a contract for the sale of constituent materials. Contracts in which the furnishing of materials was merely incidental to construction activities were not deemed "contracts to sell" within the meaning of the Uniform Sales Act. See Foley Corp. v. Dove, 101 A.2d 841 (D. C. Mun. App. 1954); 1 Uniform Laws Annotated § 1 n. 95 (1950). Therefore, the contract involved in this case is not strictly within the scope of the Uniform Sales Act and the presumptions as to intent set out in the Sales Act are not applicable to it. The Government also argues that, to the extent title to materials is dealt with in the contract, articles 16 and 27 require the inspection and approval of materials before title to them passes. Pointing out that no such inspection and approval had been made at the time of assessment, the Government claims that title to the materials remained in Akron at the time of assessment.

■ Such a construction, this court concludes, is inconsistent with article 20 of the subcontract. That provision explicitly sets out the relationship between the parties in the event of the premature termination of the subcontract by Dorset. While it does not indicate where, in the event of such termination, title to materials delivered to the site but not yet paid for by Dorset lies, it does explicitly permit Dorset to take "possession" of such materials and complete the job. In the course of oral argument on the motion for summary judgment, the Government conceded that under the contract Dorset's right to "possession" of the materials precluded Akron from removing the materials from the job site. Moreover, article 20 not only confers on Dorset a right to possess the materials but also limits Akron's rights after termination to claims against Dorset for the unpaid balance of the contract price. In that the article limits Akron's rights after termination to claims against Dorset, it impliedly excludes any other interest Akron may be said to have retained with regard to the subject matter of the contract, including title to the materials on the job site. This court concludes, therefore, that the parties envisioned that, upon termination under article 20 of the subcontract, whatever interest Akron had in the materials on the construction site would pass to Dorset so that it could promptly proceed to complete the work contracted for.

Such a construction is consistent with expressions in the contract to the effect that time was of the essence. The contract contained two typewritten modifications of what appears to be an otherwise boilerplate contract which indicate that the work was to be "pursued diligently" (article 2) and "in the most expeditious manner possible" (attached schedule "A"). Because time was of the essence, it was necessary for the general contractor to insure that the progress of construction was not delayed in the event it was necessary to dismiss the subcontractor. To insure that progress continued, the general contractor provided in the contract that, in the event of termination, he could take over the materials and equipment necessary to complete the work to the exclusion of any property interest of Akron. By taking over the materials already on the job site, he saved the time involved either in having the defaulting subcontractor remove his materials and in having new materials delivered or in bargaining with the defaulting contractor for the purchase of those materials already on the job site.

The agreement between Dorset and the Internal Revenue Service upon which Aetna has given its bond made explicit reference not only to the materials seized but also to sums due Akron from Dorset as of the date the contract was terminated. The agreement also stated that the levy was upon "payments which might be due by Dorset to Akron, Inc.", not simply the materials alone. Therefore, a complete resolution of the dispute between the United States and Aetna requires a determination not only of Akron's property interest in the materials seized but also of Akron's interest in any claim for money against Dorset.

With regard to Akron's claim for money due from Dorset, article 20 of the contract is again relevant. Article 20 provided that, in the event of termination, the subcontractor was not entitled to further payment until the work was finished. Furthermore, the amount to which the subcontractor was to be entitled when the work was finished was subject to being set off by amounts expended by Dorset in completing Akron's work. The parties have stipulated that the work on the contract has been completed and that the cost to Dorset of completing Akron's work exceeded the unexpended contract balance. Therefore, Akron is due nothing from Dorset. A fortiori, the United States, which succeeded to Akron's right to payment on its contract, is due nothing from Dorset. See United States v. Raley Contracting Co., 210 F.Supp. 54 (N. D. Miss. 1962). This result is consistent with those decisions to the effect that, where a surety assumes the obligation of a defaulting contractor prior to the assessment of federal taxes, the surety's claim to the balance of the contract price is superior to a federal tax lien. See, e. g., Fidelity & Deposit Co. of Maryland v. New York City Housing Auth., 241 F.2d 142 (2d Cir. 1957); New York Cas. Co. v. Zwerner, 58 F.Supp. 473 (N. D. Ill. 1944). Here, the general contractor, much like a surety, took over and completed the subcontractor's obligations under the contract. Given a contract which expressly entitles the general contractor to set off the cost of completing the subcontractor's obligation, there is no reason he should fare worse than a surety. This court, therefore, grants summary judgment for Aetna Casualty and Surety Company as to count II of the complaint.

Accordingly, the clerk will enter judgment in favor of the defendant Aetna Casualty and Surety Company.