**BANKERS TRUST SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Charles O. COOLEY, Jr., et al., Defendants.**

**No. EC 73-22.**

United States District Court, N. D. Mississippi, E. D.

July 23, 1973.

R. Barry Vickery of Carter, Mitchell & Robinson, Jackson, Miss., for plaintiff.

William L. Shraberg, Trial Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., F. M. Bush, III, of Mitchell, McNutt & Bush, Tupelo, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This is an interpleader action originally filed in the Chancery Court of Lee County, Mississippi by Bankers Trust Savings and Loan Association (Bankers Trust). The defendants are: Charles O. Cooley, Jr., Individually, and d/b/a Cooley Construction Company (Cooley); Barbara B. Cooley (Mrs. Cooley); Better Homes of Tupelo, Inc. (Better Homes); The United States of America (United States); John E. Aldridge, Executive Director, Employment Security Commission, State of Mississippi (MESC); William Edward Riggs (Riggs); Lowe's of Tupelo, Inc.

(Lowe's); David Nash, d/b/a Nash Plumbing Company (Nash); Senter's Transit Mixed, Inc. (Senter); Joe Young, d/b/a Young's Electric Shop (Young); Leake and Goodlet, Inc., (Leake and Goodlet); R. N. Sheffield, d/b/a Sheffield Electric (Sheffield); Jacob C. Pongetti, Trustee in Bankruptcy for Charles O. Cooley, Jr., EBK 72–106, United States District Court for the Northern District of Mississippi (Pongetti).

At the time of the commencement of the action Bankers Trust held an escrow account for $14,000 representing the balance of a $35,000 loan theretofore made by it to Mr. and Mrs. Cooley for the construction of a residence for their use as a home. Being desirous of paying the money on hand to the rightful owners, Bankers Trust filed the interpleader action to determine the party or parties rightfully entitled thereto.

The United States timely removed the action to this court, pursuant to 28 U.S.C.A. § 1444.

The action is before the court on motions of defendants, United States and Leake and Goodlet for summary judgment. The court has received briefs and oral arguments from the parties, and the matter is now ripe for decision.

Bankers Trust made the loan mentioned above to Mr. and Mrs. Cooley for the purpose of financing the new home which they were to build on an unencumbered lot or parcel of land owned by Cooley and situated in Lee County, Mississippi.

The transaction with Mr. and Mrs. Cooley involved a permanent type financing agreement. The arrangement served to provide ready cash for the purchase of materials and payment for labor going into the construction as well as permanent home financing. The loan was closed before construction was commenced and was evidenced by a promissory note and deed of trust representing a first lien on the lot above mentioned,

both executed by Mr. and Mrs. Cooley. The note and deed of trust were dated February 17, 1972. The principal amount of the note was $35,000. This amount drew interest at 7¾ percent per annum from the date of the note until the principal amount with interest had been paid. The note provided that the principal amount with interest would be amortized over a period of twenty-five years in monthly installments of $264.37 each. The first installment was due April 1, 1972, and an installment became due on the first day of each month thereafter to and including March 1, 1997.

The proceeds of the note, after deduction of closing costs amounting to $1,520.50, were deposited in an escrow account with Bankers Trust to the credit of Mr. and Mrs. Cooley and the closing attorney. The parties agreed that the money in the escrow account would be paid to Mr. and Mrs. Cooley in three installments, all timed to coincide with the progress made in the construction of the residence. The only written evidence of this agreement is the escrow account ledger sheet of Bankers Trust. There is typed on this sheet the following:

1st Disbursement— $ 7,229.50 @ 25% less Closing Costs
2nd Disbursement— $12,250.00 @ 35%
3rd Disbursement— $14,000.00 @ 40%

The agreement made by the parties provided that when 25 percent of the construction work had been performed, after inspection and approval by Bankers Trust, the first disbursement of 25 percent would be made provided an inspection of the records in the Chancery Clerk's office of the county did not reflect a lien of record against the property. The second disbursement of 35 percent was to be made on the same conditions as provided for the first disbursement. Finally, the balance, or third disbursement of 40 percent was to be made upon completion of the house, inspection and approval by Bankers Trust, a clear record in the Chancery

Clerk's office, and the presentation to Bankers Trust of an affidavit by Mr. and Mrs. Cooley that all bills for materials and labor going into the construction of the house had been paid.

Prior to the commencement of the action, the first and second disbursements had been made and they are not in controversy. The third or final disbursement of $14,000 has not been made, and is the subject of the action sub judice.

The court is not, therefore, concerned with any matters pertaining to the first and second disbursements.

Neither is the court concerned with the property. The deed of trust has been foreclosed and the property sold at public auction. There is no contention that the property is subject to any claim arising in this litigation.

On March 24, 1972, Cooley conveyed the residence to Mrs. Cooley, the only consideration being the assumption by Mrs. Cooley of the mortgage debt to Bankers Trust. The house had not been completed at that time, but was in the course of construction.

After the transfer of title to Mrs. Cooley, several of the defendants, who had furnished supplies and materials going into the construction of the house, filed notices of construction liens against the property in the office of the Chancery Clerk of the county. The papers and pleadings reflect the recordation of notices of construction liens as follows:

| Name of Materialman | Type of Claim | Date of Recordation | Amount |
|---|---|---|---|
| Lowe's | Construction Lien | 6/ 1/72 | $1,075.52 |
| Nash | " | 6/13/72 | 1,377.00 |
| Leake & Goodlet | " | 8/ 2/72 | 7,822.23 |
| Sheffield | " | 11/ 8/72 | 1,608.43 |
| Lawson | " | 1/ 5/73 | 357.50 |

The record does not reflect that defendants Riggs, Senter and Young have appeared in the action or are claiming any part of the interpleaded funds.

During the pertinent period the United States made assessments against Cooley for withholding taxes imposed under the Federal Insurance Contributions Act and for taxes imposed under the Federal Unemployment Tax Act as follows:

| Taxable Period | Type of Tax | Date of Assessment and Date of Notice and Demand | Amount of Assessment |
|---|---|---|---|
| 1970 | FUTA | 3–27–72 | $   71.81 (T) |
|  |  |  | 17.95 (a) |
|  |  |  | 3.23 (b) |
|  |  |  | 4.96 (i) |
|  |  | 12–4–72 | 6.02 (a) |
|  |  |  | 24.05 (T) |
| 4 Q. 70 | WH–FICA | 6–5–72 | $1,779.34 (T) |
|  |  |  | 27.28 (c) |
|  |  |  | 272.85 (a) |
|  |  |  | 65.48 (b) |
|  |  |  | 88.21 (i) |
| 1 Q. 71 | WH–FICA | 3–27–72 | $1,654.09 (T) |
|  |  |  | 55.14 (c) |
|  |  |  | 413.52 (a) |
|  |  |  | 49.62 (b) |
|  |  |  | 89.77 (i) |
| 2 Q. 71 | WH–FICA | 3–27–72 | $   415.23 (T) |
|  |  |  | 13.84 (c) |
|  |  |  | 103.81 (a) |
|  |  |  | 6.23 (b) |
|  |  |  | 16.24 (i) |
| 3 Q. 71 | WH–FICA | 3–27–72 | $1,200.94 (T) |
|  |  |  | 45.02 (c) |
|  |  |  | 240.19 (a) |
|  |  |  | 6.00 (b) |
|  |  |  | 28.95 (i) |
| 4 Q. 71 | WH–FICA | 3–20–72 | $2,027.05 (T) |
|  |  |  | 67.57 (c) |
|  |  |  | 20.27 (b) |
|  |  |  | 16.13 (i) |
| 1971 | FUTA | 4–3–72 | $   141.90 (T) |
|  |  |  | 2.13 (b) |
|  |  |  | 1.49 (i) |
| 1 Q. 72 | WH–FICA | 7–3–72 | $1,376.82 (T) |
|  |  |  | 45.89 (c) |
|  |  |  | 68.84 (a) |
|  |  |  | 13.77 (b) |
|  |  |  | 14.45 (i) |

(T)—Tax.
(i)—Interest.
(a)—Penalty imposed pursuant to the provisions of Section 6651(a)(1) of the Internal Revenue Code of 1954.
(b)—Penalty imposed pursuant to the provisions of Section 6651(a) of the Internal Revenue Code of 1954 for failure to pay tax.
(c)—Penalty imposed pursuant to the provisions of Section 6656 of the Internal Revenue Code of 1954.

Notices of Federal Tax Lien, Forms 668 pertaining to the assessments above described, were filed at the office of the Chancery Court of the county, said no-

tices reflecting an unpaid balance due on such assessments as follows:

| Assessment for Which Notice of Lien was Filed | Date Notice Filed | Unpaid Balance Recited in Notice |
|---|---|---|
| FUTA 1970 | 6–8–72 | $ 97.95 |
| WH–FICA 4 Q. 70 | 6–15–72 | $1,545.20 |
| WH–FICA 1 Q. 71 | 6–15–72 | $2,262.14 |
| WH–FICA 2 Q. 71 | 6–15–72 | $ 555.35 |
| WH–FICA 3 Q. 71 | 6–15–72 | $1,521.10 |
| WH–FICA 4 Q. 71 | 6–15–72 | $2,131.02 |
| FUTA 1971 | 6–15–72 | $ 145.52 |
| WH–FICA 1 Q. 72 | 7–13–72 | $1,519.77 |

MESC filed a notice of a judgment against Cooley for unpaid state unemployment taxes at the office of the Chancery Clerk of the county on September 8, 1972. The amount of the judgment was $294.37.

It is shown through the discovery deposition of George M. Taylor, an executive of Bankers Trust, that the subject property was sold under the Cooley trust deed on March 16, 1973 to Leake and Goodlet for the sum of $41,000. The proceeds of the sale were sufficient to discharge the mortgage indebtedness and the costs of sale.

The only question with which the court is presently concerned is whether the tax liens of the United States attach to Cooley's one-half interest in the escrow account,[1] and, if so, whether such liens are superior to the claims of defendant materialmen.

The parties in their presentation of the issues have discussed the effect of the filing of the notices of liens in the office of the Chancery Clerk. Miss. Code Ann. § 356 (Cum.Supp.1972) creates a lien against property of the type involved in this action for debts contracting and owing by the owner, for labor done or material furnished in the construction thereof. The section provides that the lien shall take effect as to purchasers or encumbrances for a valuable consideration without notice thereof,

only from the time of the commencement of suit to enforce the lien [2] or from the time of the filing of the contract under which the lien arose, or notice thereof, in the office of the Clerk of the Chancery Court of the county in which the property is situated.

A lien in favor of the United States for unpaid federal taxes is created by virtue of 26 U.S.C.A. § 6321. The pertinent part of this section is as follows:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property*, whether real or personal, belonging to such person. (Emphasis added).

Section 6323(a) of Title 26 U.S.C.A. provides:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

Subsection (f) of Section 6323 provides for the form of notice and the place where the same shall be filed. It is not denied that the United States complied with the applicable law in filing the notices of tax liens at the office of the Chancery Clerk.

The federal tax liens named only Cooley as the taxpayer against whom the liens were filed. At the time of the filing, Mrs. Cooley was the record owner of the property. The notices of construction liens which were filed by defendant materialmen named both Mr. and Mrs. Cooley as the owners of the

---

1. The account has a balance of $14,000. The United States claims that one-half of this amount is the property of Cooley, and, thus, subject to its liens. The United States does not question Mrs.

Cooley's ownership of the other half of the fund.

2. The lien is enforced in the manner provided in Miss.Code Ann. § 360 (1956).

property against which the liens were filed.

Because of the disposition made of the motions by the court, it is unnecessary to resolve the questions presented by the recordation of the various liens, to which reference has been made. For the same reason the court does not undertake to resolve the question of the applicability of 26 U.S.C.A. § 6323(c) to the issues involved in this action. The result reached by the court makes it unnecessary for the court to resolve either problem.

■ The lien for unpaid taxes in favor of the United States attaches by virtue of Section 6321, supra, to "all property and rights to property, whether real or personal" belonging to the taxpayer. In making the determination as to "the property and rights to property" of the taxpayer to which the statute applies, the court will look to state rather than federal law. The only interest in the escrow account which is subject to the tax liens of the United States is the interest which could be asserted and enforced by Cooley. Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 45, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

The Second Circuit in City of New York v. United States, 283 F.2d 829, 831 (2nd Cir. 1960), said:

Under § 6322, 26 U.S.C.A. § 6322, the lien arises at the time the assessment is made. As of that moment, therefore, if there exist property or rights to property "belonging" to the debtor, the lien will attach. In determining the nature and extent of the debtor's ownership, however, we are remitted to state law since § 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law."

See, also, Home Insurance Company v. B. B. Rider Corporation, 212 F.Supp. 457, 462 (D.N.J.1963); Monroe Banking and Trust Company v. Allen, 286 F.

Supp. 201, 211 (N.D.Miss.1968); United States v. Raley Contracting Company, 210 F.Supp. 54, 56–57 (N.D.Miss.1962).

■ It is clear to the court that under the rules of law which prevail in Mississippi, the Cooleys did not have the right, legal or equitable, to compel Bankers Trust to pay them the balance of the money in the escrow account, without furnishing Bankers Trust with evidence of payment for the materials and labor going into the construction residence; and, only then after a search of the county records by Bankers Trust revealed that no liens had been recorded against the house being constructed. Bankers Trust was required by Mississippi law to see that the funds in the escrow account were used for payment of materials and labor going into the work, otherwise Bankers Trust would sacrifice its prime lien position on the property in favor of those furnishing materials and labor used in the construction of the residence. Southern Life Insurance Co. v. Pollard Appliance Co., 247 Miss. 211, 150 So.2d 416, 420 (1963).

The Mississippi Supreme Court said in Southern Life Insurance Co. v. Pollard Appliance Co., *supra*, at page 420:

A lender advancing construction funds must use reasonable diligence to see that these funds are actually used in payment for materials or other cost of construction. Such a construction mortgagee has preference over materialmen and laborers only to the extent that its funds actually go into the construction.

In First National Bank of Greenville v. Virden, 208 Miss. 679, 45 So.2d 268, 271 (1950), when discussing the rule that gives a construction lender preference over the claim of those furnishing materials and/or labor for the work only to the extent that the lender's funds actually go into construction, the court said "[i]t is simple justice that such mortgagee shall have preference only to the extent that its funds actually went into the construction"; and, in Wortman & Mann, Inc. v. Frierson

Building Supply Co., 184 So.2d 857, 860, (Miss.1966), the court approved the method adopted by Bankers Trust in the action sub judice to see that the funds in the escrow account actually went into the construction of the residence.

The undisputed facts, when considered in light of Mississippi law, create rights in the interpleaded escrow account in favor of those defendants who have furnished materials and labor going into the construction of the house.

The account cannot be distributed unless the funds represented thereby are used to pay for materials and labor going into the construction and to that extent the account is charged with a trust running in favor of said defendants. Cooley's right to the account is subject and secondary to the rights of the materialmen and laborers for the payment of their accounts. The only right in and to the escrow account to which the tax liens of the United States attach is the right to such of the account, if any, as may remain after the claims of the materialmen and laborers have been satisfied.

It appears to the court, paraphrasing the language of the Mississippi Supreme Court, that simple justice requires that the materialmen and laborers be paid before the United States, as Cooley's tax creditor, takes anything from the account; otherwise, in reality, the materialmen and laborers would be paying Cooley's debt to the United States.

In summary, the court finds that the motion of the United States for summary judgment is not well taken and should be overruled and that the motion for summary judgment of Leake and Goodlet should be sustained. An appropriate order will be entered by the court.

There remains, however, the distribution of the funds in the escrow account to the several defendants furnishing materials and labor going into the construction of the house, and the allowance of costs to Bankers Trust. For the settlement of these issues, jurisdiction of the action is retained.